ELDON WILLIAMS, Appellant, v. THE ATCHISON, TOPEKA and SANTA FE RAILWAY COMPANY, a Corporation, Consolidated With

FRANK E. THOMAS, Appellant, v. THE ATCHISON, TOPEKA and SANTA FE RAILWAY COMPANY, a Corporation, and

ERVIN S. NEIS, Appellant, v. THE ATCHISON, TOPEKA and SANTA FE RAILWAY COMPANY, a Corporation.—Nos. 40144, 40145 and 40143.—204 S. W. (2d) 693.

Division Two, September 8, 1947.

Motion for Rehearing or to Transfer to Banc Overruled, October 13, 1947.

*W. L. Cunningham, Phineas Rosenberg* and *Philip J. Close* for appellants.

968

*John H. Lathrop, Sam D. Parker* and *William J. Milroy* for respondent.

970

WESTHUES, C.—Appellants, Eldon Williams, Frank E. Thomas and Ervin S. Neis, each filed suit against respondent, The Atchison, Topeka and Santa Fe Railway Company, seeking damages for a violation of seniority rights as locomotive firemen. The suits were consolidated for trial and submitted on an agreed statement of facts and some oral evidence offered by appellants. It was agreed that the Thomas and Neis cases would abide the result in the Williams case. At the close of the evidence respondent moved for judgment, which the trial court sustained. Appeals were taken to this court and the cases were consolidated. It was agreed that if appellants were successful the judgment in each case should be in the sum of $7,525, hence, appellate jurisdiction in this court.

Since it was stipulated that the Thomas and Neis cases will abide the result in the Williams case we will consider the latter case only. The history of Williams' employment by respondent, as disclosed by the evidence, is about as follows: Williams established a seniority status on the Panhandle Division of respondent's railroad lines as of June 26, 1926. It may be stated here that each division has its own seniority roster. Williams, at the time of the trial, was still holding that seniority date on the Panhandle Division and that seniority rating is not in dispute in this case.

Employees, such as railway firemen and enginemen, in each division are divided into three groups: First, those in regular service, which of course are those holding the oldest seniority rights; second, those on the extra board who are called for service when there are no men on the regular board available for duty; third, those on furlough, consisting of those men not needed for service until there is room on the extra board. When there is a slack in business in a particular division of the railroad the men at the bottom of the list on the regular board may be pushed back to, or placed on the extra board and then the lowest on the extra board may become furloughed men and not considered in service. These furloughed men, however, do not lose their seniority. They must, when called, return to work within thirty days and are then placed on the extra board. When business on the railroad improves furloughed men are preferred over new men applying for work. The evidence reveals that it was the custom of the defendant railroad, in case all men on the regular board, the extra

board and the furloughed men were put in service and more men were needed, to notify other divisions of the railroad. If there were any men on these other divisions that were on furlough or idle they would be given preference over new men applying for work.

In the summer of 1936, business on the Panhandle Division was slack and Williams was taken off the extra board and furloughed. At this time business on the Pecos Division of respondent railroad was prosperous and men were needed. Williams was notified of this and traveled on an employee's pass to Belen, New Mexico. He went to work and made his first pay run on October 17, 1936. Williams continued on the Belen extra board until November 11, 1936, when he went to Clovis, New Mexico, and worked there until February 15, 1937. Williams then asked for and was granted a leave of absence. He was notified at this time that due to slack in work he had been furloughed on the Pecos Division. Williams then returned to the Panhandle Division and worked there from June, 1937, to September 9, 1937, when he was again furloughed. On September 13, 1937, he he notified G. R. Miller, Master Mechanic of the Pecos Division, that he was ready for work. Mr. Miller replied to this letter informing Williams that his seniority date of October 17, 1936, entitled him to be on the Pecos Division extra board. Miller also informed Williams that if he desired to work on the Pecos Division he must release his seniority right on the Panhandle Division. Williams agreed to that and signed a letter to that effect. He then worked on the Pecos Division making his first pay run on September 29, 1937. It may be stated here that the waiving, by Williams, of his seniority rights on the Panhandle Division was never put into effect. Williams' letter waiving his rights was torn up by Miller. The details of this occurrence are not important and will not be related. The placing of Williams on the extra board, by Miller, resulted in taking off the board the name of one Paul Sellers who had a seniority date subsequent to October 17, 1936. It may be stated here that when Williams was off duty on a leave of absence in March, 1937, his name was taken off the roster of the Pecos Division. The master mechanic, Miller, did not refer to this when he notified Williams to return to work in September, 1937. Evidently he did not know this fact or overlooked it.

C. J. Eastham, Chairman of the Grievance Committee at Clovis, New Mexico, on September 29, 1937, wrote a letter to Mr. C. E. Smyer, Superintendent at Clovis, and Mr. G. R. Miller, Master Mechanic at Amarillo, Texas, protesting on the part of Sellers against Williams being placed on the extra board ahead of Sellers. In this letter Eastham contended that Williams held the status of a borrowed man on the Pecos Division and not that of a hired man. Now the difference, as we learn from the record, is this: If Williams was a borrowed man seniority would date from his first pay run on the Pecos Division.

He would hold that date for six months when he would be required to decide whether he wished to remain permanently on that division. If he made no decision he would lose his seniority. If Williams was a hired man his seniority would likewise date from his first pay run, but he would be entitled to hold this seniority until it conflicted with his seniority on his home division, meaning that if he were called for duty on both divisions at the same time he would be required to decide on which division he wished to hold his seniority and to give up the other. In this case Williams did not give notice that he desired to permanently remain on the Pecos Division. He insists that he was not required to do so because he was a hired man and his seniority rights on the two divisions at no time came in conflict; and therefore he is still entitled to his seniority date of October 17, 1936, on the Pecos Division.

Considerable correspondence was had between Eastham, Miller and others over this matter. On October 28, 1937, there was a meeting held at Amarillo, Texas, at which J. E. Dyer, assistant to the general manager of respondent railroad; W. C. Keiser, general chairman of the general grievance committee, and C. J. Eastham, local chairman of the grievance committee, were present. At this meeting the disputed seniority of many firemen were determined by the committee. It was decided that Williams held the status of a borrowed man on the Pecos Division and had lost his seniority date of October, 1936. He was given a seniority date as of September 29, 1937, on the Pecos Division, that being the date of the first pay run made after March, 1937, when his name was stricken from the roster. Williams was notified of this and entered his written protest to the seniority date of September 29.

Williams offered evidence that he did not know of the meeting of Dyer, Keiser and Eastham; that he was not represented at the meeting and therefore the decision made by the committee was not binding on him. However, on December 14, 1937, Williams appealed to the executive committee of the brotherhood at Topeka, Kansas. On March 18, 1938, that committee sustained the ruling made at Amarillo. Williams then appealed to the president of the brotherhood. This resulted in a hearing being held by H. M. Van Sant, vice-president of the brotherhood on October 11, 1938, at Wichita, Kansas. Williams appeared in person at this hearing. On October 17, 1938, a decision was rendered sustaining the rulings previously made. On February 13, 1939, Williams and others who were affected by the rulings made pursuant to the hearing before Van Sant, gave notice of intention of submitting their claims to the National Railroad Adjustment Board, First Division, Chicago, Illinois. The adjustment board, on March 1, 1939, made an order declining to hear the matter for the reason that no dispute existed because the claim of Williams had been handled in accordance with the procedure prescribed. On January 29, 1940, a

second application was made to the National Railroad Adjustment Board but the board refused to give any further consideration to the case.

It is the contention of respondent that the Schedule of Rates, Rules and Regulations for Locomotive Firemen, which constitutes the collective bargaining agreement between respondent and its firemen, prescribes the method of determining seniority rights in case of dispute and that appellant is bound by the decision made; also, that Williams submitted his claim to the National Railroad Adjustment Board and that he is bound by the decision of that board. We are of the opinion that these contentions must be sustained. Williams contends that he has been deprived of a valuable right without due process of law. We may concede that a seniority status is property right but we do not concede that Williams was deprived of any such right. The decision made merely established what right he had. We must keep in mind that seniority rights are based on the schedules. These schedules, which create seniority rights, also provide a procedure and method of settling disputes between various employees as to seniority rights and other matters. When an individual is employed, such as an engineman, he acquires a seniority right by virtue of the schedules and in doing so accepts all the conditions attached thereto including the method prescribed for settling disputes. Elgin, J. & E. Ry. Co. v. Burley, 66 Sup. Ct. 721, 327 U. S. 661.

The pertinent portions of the schedules applicable to this case read as follows:

"Article II.

"The General Committee of the Brotherhood of Locomotive Firemen and Enginemen will represent all locomotive firemen in the making of contracts governing rates, rules and working conditions and interpretations thereof.

"The right of any engineer or firemen to have the regularly constituted committee of his organization represent him in the handling of his grievances, under the recognized interpretation placed upon the schedule involved by the officials of the Company and the General Committee making the same in conceded."

"Sec. 8. (a) General grievance committees shall have authority to make and interpret agreements with representatives of railway companies concerning rates of wages, rules respecting seniority rights, adjustments of grievances and other matters necessary in the interest of the members they represent. When the general grievance committee is not in session, the general chairman has authority to interpret the schedule."

"(c) All rules, regulations, contracts and agreements agreed upon by officials of a railway company, and a general grievance committee or/its representatives, shall be binding upon all members working within the jurisdiction of the committee."

The United States Railway Labor Act authorizes the creation of grievance committees as established in the schedules, a portion of which we have above set forth. See sec. 152, Title 45, U. S. C. A.

Sec. 153, U. S. C. A., Title 45, established the National Railroad Adjustment Board. The first division of this board was given jurisdiction of certain matters among which we find disputes involving firemen. Subsection (m) of sec. 153, supra, provides:

". . . the awards shall be final and binding upon both parties to the dispute, . . ."

Appellant contends that he was not represented by anyone at Amarillo; that Keiser and Eastham were adverse and hostile to him and others; that they admitted appellant was a hired man and not a borrowed man on the Pecos Division and that, therefore, he was entitled to his seniority date of October 17, 1936; that the decision made at Amarillo was arbitrary, not supported by evidence and therefore void. Appellant, by appealing from the order made at Amarillo, admitted the jurisdiction of the committee to decide the question at issue. If he was not present there he was personally present when the entire matter was considered de novo by Van Sant, vice-president of the brotherhood. As to the contention that Keiser and Eastham admitted Williams was a hired man, suffice to say that that was the vital question in dispute. Williams' status was fixed on the theory that he was a borrowed man. The record contains evidence that Williams at one time thought he was a borrowed man. On September 21, 1937, Williams wrote a letter addressed: "Mr. Roy Morris, Chairman, B. of L. F. & E.", which letter contained the following:

"I was borrowed on the Pecos division last year and made my first pay trip on Oct 17th, 1936, establishing my seniority of that date and was cut off the board March ██ 12th, 1937, being little over a month before the six month period for declaration for transfer should be made."

We do not find any evidence to justify appellant's statement that Keiser and Eastham were prejudiced against him. The mere fact that they were firmly of the opinion that Williams was a borrowed man does not show prejudice. No contention was made that Van Sant, who heard the case and many other cases at Wichita, were prejudiced.

Appellant in his brief contends that his seniority date of October, 1936, was a valuable right and could not be taken from him, waived, altered or destroyed by the bargaining agent, brotherhood or respondent without his consent. The trouble with this contention is that appellant assumes that the seniority date of October, 1936, was an

established right. That was the very question in dispute, the result being that the decision made fixed appellant's seniority right as of September, 1937. Appellant cites such cases as Baron v. Kurn, 349 Mo. 1202, 164 S. W. (2d) 310. In that case there was no question as to the seniority date. The plaintiff sued for damages because he was not called when his turn came. The case did not involve the question now under consideration. Steele v. Louisville & N. R. Co., 323 U. S. 192, 65 Sup. Ct. 226, cited by appellant, holds that under sec. 151, U. S. C. A. of the Railway Act it is the duty of a representative of a craft or class of railway employees to represent all of the employees of the craft. In that case there was no question as to plaintiff's seniority. In Elgin, J. & E. Ry. Co. v. Burley, 327 U. S. 661, 66 Sup. Ct. 721, 723, the court indicated that if a disputed question were presented to the Labor Adjustment Board and the parties were represented in person or by an authorized agent the action of the board would not be subject to judicial review. Congress has seen fit, evidently, in the interest of public welfare, to set up a system of settling disputes, such as we now have before us, through a committee consisting of representatives of the brotherhood, or agents of the employees and representatives of the railroads. If parties to a dispute are not bound by the decision of such a committee, after having submitted the question to them for decision, it is a useless procedure. We hold that Williams, having participated in the proceedings until final disposition and then having presented his claim to the National Railway Adjustment Board, which board decided against him, cannot now litigate the same question in the courts. Washington Terminal Co. v. Boswell, 124 Fed. (2d) 235; Berryman v. Pullman Co., 48 Fed. Supp. 542. In the latter case Judge Collet, District Judge, made the following comment:

"While it is conceded that the remedy provided by the Railway Labor Act is not exclusive, Moore v. Ill. Central Ry. Co., 312 U. S. 630, 61 S. Ct. 754, 85 L. Ed. 1089, the Act does provide that the award of the Adjustment Board 'shall be final and binding upon both parties to the dispute, except insofar as they shall contain a money award.' 45 U. S. C. A., sec. 153 (m).

"The award of the Adjustment Board contained no money award. It did determine that plaintiff was discharged because of and as a result of his own misbehavior. That finding is made final by the statute. There is no room for a subsequent inquiry into the same question by the Courts. But by the present action plaintiff seeks to have the Court do just that. He voluntarily submitted the dispute to the Adjustment Board, got its decision and cannot now ignore it."

That language is applicable to the present situation. The judgment is affirmed. *Bohling* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.