Fred **ARBUCKLE**, Appellant,

v.

**FRUEHAUF TRAILER COMPANY,**
Respondent.

No. 23758.

Kansas City Court of Appeals.

Missouri.

Oct. 7, 1963.

Haskell Imes, Kansas City, for appellant.

Michael J. Bogutski, Kansas City, for respondent.

HUNTER, Judge.

Plaintiff, Fred Arbuckle, sued defendant, Fruehauf Trailer Company, for $5,000 compensatory and $5,000 punitive damages resulting from defendant's failure and refusal to issue him a service letter although requested to do so. At the close of plaintiff's case the trial court directed a verdict for defendant. After an unavailing motion for new trial, plaintiff appealed.

From the record before us and the briefs of counsel it is apparent that the sole issue on appeal is the proper construction of that portion of our service letter statute which we have italicized (Section 290.140, RSMo 1959, V.A.M.S.): "Whenever any employee of any corporation doing business in this state shall be discharged or voluntarily quit the service of such corporation, it shall be the duty of the superintendent or manager of said corporation, upon the written request of such employee to him, *if such employee shall have been in the service of said corporation for a period of at least ninety days,* to issue to such employee a letter, * * *."

It is the position of plaintiff that he adduced evidence from which the jury could properly find he had been in the service of defendant for the statutory period of at least ninety days, and it is defendant's and the trial court's position that plaintiff's own testimony established that he had not been in the employment of defendant "for a period of at least ninety days, at the time of the discharge used as the basis of the service letter request."

According to the evidence, plaintiff was first employed by defendant corporation on May 5, 1952, as a mechanic's helper. He was promoted to a grade A mechanic almost four months later. He was having difficulty with his immediate supervisor, John Holton, who complained of the inefficiency of his work. About May 19, 1954, Holton told him, "You haven't been very pleasing to me. I'm going to let you go." Plaintiff filed a grievance through his Union and was off two weeks without pay. Apparently as a result of company-union arbitration, he was permitted to return to work but as a grade B mechanic at 10¢ an hour less than his former pay rate.

On March 25, 1961, plaintiff was told by the company that he was "terminated" for alleged failure to put a patch in a trailer properly. On March 28, 1961, he filed a grievance through his union which had a collective bargaining agreement with defendant, complaining that he was unjustly discharged and should be returned to work without loss of seniority, wages or any other benefit. Defendant filed its answer to his grievance, claiming it was justified in terminating plaintiff for numerous acts of inefficiency and improper work. The result of the use of the grievance procedure for arbitration provided by the collective bargaining agreement was that plaintiff, who had been off work two weeks while the matter was under arbitration, was permitted to return to work without loss of seniority but was to lose 51½ hours' pay for that time and was to be paid by the company for 28½ hours for that time. (The arbitration report was not introduced

in evidence.) Plaintiff and Holton shook hands, "everybody was satisfied" and plaintiff resumed work of the same kind as he had been doing previously.

This honeymoon between plaintiff and defendant lasted only a short time. On June 2, 1961, plaintiff was again terminated. He again filed a grievance, but after arbitration under the company-union contract, the discharge was upheld. His union advised him the company did not have to take him back.

On August 2, 1961, after being advised of the result of the arbitration, plaintiff wrote to the defendant requesting a service letter. The defendant received his request, but did not respond and did not provide the service letter.

It is the position of defendant that plaintiff's discharge on June 2, 1961, occurred less than ninety days after his "discharge" on March 25, 1961, which was followed by his reemployment on April 10, 1961, and, therefore, he had not been in defendant's employ "for a period of at least 90 days" when he was discharged "for the third and last time", citing Barrows v. Riss and Company, 238 Mo.App. 334, 179 S.W.2d 473, and Ackerman v. Thompson, 356 Mo. 558, 202 S.W.2d 795, 797, as controlling.

In the Barrows case, supra, decided by this court in 1944, plaintiff, his own sole witness, testified, loc. cit. 474, "he was employed by defendant as a truck driver in interstate commerce from 1936 until April or May, 1940, when he was discharged for having violated an Interstate Commerce Commission rule prohibiting carrying passengers on the truck; that he was 'off' about three weeks; that he was then 're-employed', 'reinstated'; and that he was again discharged June 26, 1940." After his discharge on June 26, 1940, he unavailingly demanded a service letter. This court held that the statutory "period of ninety days" meant a continuous employment of at least ninety days; that plaintiff had been discharged in April or May, 1940; that his "reinstatement" or "reemployment"

meant only that he was put back into the same position from which removed; and that his employment hence was not continuous for a period of ninety days as contemplated by the service letter statute.

In the Ackerman case, supra, plaintiff, who had been employed by defendant continuously for many years "was cut off in a force reduction but worked extra as a brakeman between January, 1932, and June 1, 1935." About the latter date he was notified he was cut off and that his services were no longer required due to the abandonment of a railroad line. He requested a service letter but was refused it. The Missouri Supreme Court ruled, 202 S.W.2d loc. cit. 797, "while plaintiff's testimony revealed that in the last couple of years he was not called for work daily, still he held himself available for work when needed and did extra work when called. We hold this satisfies the requirement of the statute as construed by Barrows v. Riss & Co., [238] Mo.App. [334], 179 S.W.2d 473, that the specified ninety-day period of service has reference to a continuous employment of at least ninety days. Words are flexible. Although not working daily, there is no question but that plaintiff continued in the 'service' of defendant until he was discharged."

Neither the Barrows case nor the Ackerman case ruled the precise question before us, and we deem it to be one of first impression.

■ In the instant case the evidence indicated defendant company as the employer had by written contract with the plaintiff's union surrendered its otherwise complete right to discharge an employee with or without cause or reason, and had agreed it could discharge only for whatever cause the contract specified. This contract also set up an arbitration procedure for grievances filed and the results of the arbitration were apparently binding on the parties. It is, of course, the basic law that an employee who has a union to bargain in his behalf and who agrees to work

and does work under the contract adopts that contract, as his contract of employment and is entitled to its benefits as well as its obligations. See, Baron v. Kurn, 349 Mo. 1202, 164 S.W.2d 310, 142 A.L.R. 787.

While the testimony was that plaintiff was "discharged" or "fired" on March 25, 1951, and "reemployed" or reinstated on April 10, 1961, it is likewise clear from the evidence that this "discharge" was subject to plaintiff's contractual right to file a grievance challenging the validity of the discharge as not being for a cause authorized by the contract.

There was testimony indicating the arbitrator held that an outright discharge of plaintiff was not justified but that plaintiff's conduct was such that he should receive only partial pay for the time occupied by the arbitration and during which he did not actually work. It is noteworthy that plaintiff as a result of the arbitration did not lose his seniority over this incident. Nor did he seek employment elsewhere during the time he was pursuing his administrative remedy through the grievance and arbitration procedure under the contract.

■ As we view the matter when an employer by written contract with the employee's union has given up its right to discharge an employee except for certain cause provided in the contract and has agreed in the contract to an arbitration procedure which, when exercised by an employee purportedly discharged, results in an award to the effect that the employer did not have proper cause to discharge the employee, although there was sufficient cause to otherwise penalize the employee, the employee who has remained available for work and returns to work is not to be considered as "discharged" within the meaning of the service letter statute, and such employee "continues within the service of said corporation" from the time of the purported discharge to the time he is

returned to work as a result of the arbitration proceedings.

 The discharge by the company must be considered as a *qualified or conditional discharge* where the company has contracted that it may be reviewed through arbitration, and if it is upset or set aside through timely authorized arbitration it cannot serve as the basis for successfully claiming that an employee is not in the service of the corporation while he is pursuing his contractual administrative remedy for challenging it. Certainly where the arbitration of a discharge is timely and successfully pursued by an employee, there has been no final or effective discharge and the status of being "in the service of the corporation" is preserved. Cf. Cross Mountain Coal Co. v. Ault, 157 Tenn. 461, 9 S.W.2d 692; International Union of Operating Engineers, Local 564 v. Cox, S.C.Texas, 219 S.W.2d 787(8). The Ackerman case, supra, is authority for the fact that an employee does not have to work daily to be considered in the service of the corporation.

A contrary view, such as defendant urges, would be inequitable and unjust to an employee who was wrongfully discharged and whose discharge was set aside in accordance with the controlling labor contract between the parties. It is our view that the legislature did not intend the interpretation of the statute that defendant urges us to make and it is the intent of the legislature as expressed in the statute that controls. In ascertaining that intent it is our duty to give the statute a fair and rational meaning, having in mind its purpose.

The evidence indicates, and defendant tacitly concedes at least for the purpose of this appeal, that plaintiff made a submissible case in all respects other than the question we have just discussed and found not meritorious.

For the reason that the trial court erred in directing a verdict for defendant at the close of plaintiff's evidence, the judgment is reversed and the cause is remanded for a new trial.

All concurring including HIGGINS, Special Judge.