R. Douglas GRUBB, Garlon Hale, George Akeman, Richard Thurston and Dairl Mears, Appellants,

v.

LEROY L. WADE & SON, INC., a corporation, and Transport Terminal Corporation, a corporation, Respondents.

No. 50661.

Supreme Court of Missouri,

Division No. 1.

Dec. 14, 1964.

Stephen R. Pratt, North Kansas City, Clancy D. Tull, Harry D. Pener, Kansas City, for plaintiffs-appellants.

Harold A. Thomas, Jr., Nelson W. Hartman, Fordyce, Mayne, Hartman, Renard & Stribling, St. Louis, for defendants-respondents.

HOUSER, Commissioner.

Action by five members of Over-the-Road and City Transfer Drivers, Helpers, Dockmen and Warehousemen, Local Union No. 41, Kansas City, to recover damages for loss of wages, vacation pay and punitive damages, based upon allegations of conspiracy and breach of a collective bargaining agreement. Defendants are Leroy L. Wade & Son, Inc., employer of plaintiffs, and the alleged co-conspirator, Transport Terminal Corporation.

Under Supreme Court Rule 74.04(b), V.A.M.R. defendants Wade and Terminal filed separate motions for summary judgment on plaintiffs' petition, attaching sup-

porting affidavits and exhibits. Plaintiffs made no response to the motions by affidavit or otherwise. The trial court examined the pleadings, motions, affidavits and exhibits of defendants, written briefs filed by the parties, and after hearing oral arguments found no genuine issue for trial as to any material fact necessary to entitle defendants to judgment as a matter of law and entered summary judgment for defendants and against plaintiffs.

■ We have jurisdiction of plaintiffs' appeal because the amount in dispute, $168,053.46, exceeds the sum of $15,000. Art. V, § 3, Constitution of Missouri, 1945, V.A. M.S.; § 477.040, V.A.M.S.

■ The facts stated in the affidavits and exhibits filed by defendants in support of their motions for summary judgment stand admitted, for the reason that plaintiffs filed no verified denial of these facts. Gruenewaelder v. Wintermann, Mo.Sup., 360 S.W.2d 678, 686.

Prior to August 10, 1962 the five plaintiffs had been employed by Wade as "checkers" or as "drive-out drivers" at Wade's terminal at Liberty. Wade is a contract carrier engaged in the business of delivering automobiles from the Ford Motor Company plant at Claycomo. For years the plant had been serviced by three automobile carrier companies, Wade, Dealers Transport, and Associated Transports, Inc., each of which provided substantially identical services: delivering automobiles from the plant to dealers, after a preliminary "check-out" service to verify the fact that all cars leaving the plant were undamaged and that they carried all of the equipment specified on the invoice; and "drive-out" service, which involved transporting new automobiles to the carrier's own nearby terminal, from which actual delivery runs to dealers originated. Prior to 1957 each of the three carriers handled its own check-out and drive-out service, employing its own checkers and drivers at the Ford plant. In 1957, to increase efficiency, Ford Motor Company took from Dealers and Associated the functions of check-out and drive-out service and gave this over to Terminal, which was not a carrier as such but a company providing terminal services for several carriers at that plant. Wade, however, continued to perform these functions until August, 1962, through eight employees, five of whom were these plaintiffs. In August, 1962 Ford Motor Company, having determined that it was inefficient for Wade to continue to perform its own check-out and drive-out services, notified Wade and Terminal that beginning with the production of 1963 model cars all such work for all three carriers would be performed exclusively by Terminal. Thereafter only Terminal employees were in the Ford plant performing these services, instead of three separate sets of employees performing the same functions for three separate employers. Wade no longer having any such work to perform, on August 10, 1962 offered its check-out and drive-out employees the choice of continuing in its employ on an indefinite lay-off basis, not to exceed the two-year period reserved under the collective bargaining agreement, or of being put on the seniority roster of Terminal. If no choice was made they were notified that they would automatically be transferred to the Terminal seniority list. Wade's employees were not discharged, or their employment terminated. They were laid off due to lack of work. They were entitled to be recalled to active employment by Wade in the event of an increase in force at Wade's terminal. When the problem arose it was discussed by Wade with representatives of Local No. 41 and agreement was reached to follow the solution adopted in 1957 when Ford terminated these services by the other two carriers, i. e., by placing the former employees of Dealers and Associated on the payroll seniority list of Terminal, where they were merged with the employees already on the list as of the date of their original date of hire with their respective companies.

The terms and conditions of employment of plaintiffs and other employees of Wade were governed by a comprehensive collective bargaining agreement between Local Union No. 41 and Wade, consisting of 37 articles. Terminal and the union had an identical contract covering its employees.

Article 7 consists of three sections.

Section 1 contains an agreement not to strike "without first using all possible means of a settlement, as provided for in this Agreement, of any controversy which might arise."

Section 2(a) provides that disputes shall first be taken up between the employer and the local union. Disputes not settled there shall go to the local joint committee, from whose majority vote decision settling a dispute no appeal could be taken to the Automobile Transporters Joint Conference Committee. Where there is no local joint committee, direct appeal to the joint conference committee is provided for. Decisions of the local joint committee by majority vote "shall be final and binding on both parties."

Section 2(b) provides that where a local joint committee is unable to agree it shall, on request, be appealed to the joint conference committee.

Section 2(e) provides that "Any decision of the Automobile Transporters Joint Conference Committee shall be final and conclusive and binding upon the Employer and the Union, and the employees involved."

Section 2(c) provides that if any grievance or disagreement is not satisfactorily settled under Sections 2(a) and (b), both the union and the employer shall submit the grievance to a board of arbitration consisting of three members, one appointed by the union; one by the employer, and the two together appointing a third disinterested arbitrator; the findings of the arbitration board "shall be final."

Section 2(d) provides that all matters pertaining to the interpretation of any provision of this agreement must be submitted to the full committee of the Automobile Transporters Joint Conference Committee, which committee, after listening to testimony on both sides, shall make a decision.

Article 6 § 2 provides that the employers and unions shall together create a joint conference committee which shall consist of duly elected delegates of the employers and unions. This committee was created and duly approved a procedure under which the joint conference committee was composed of a union panel of no less than 8 representatives of the local unions and an employer's panel of no less than 8 representatives. At each arbitration hearing no less than 5 representatives from each panel were to be selected to hear each case presented. If the joint conference committee reached a decision on a grievance by a majority vote "said decision shall be final and binding upon the parties," but if unable to reach a decision on a grievance it was to be handled under the arbitration provisions [Article 7 § 2(c)].

Article 4, "Seniority," provides that any controversy over employees' standing on seniority lists "shall be submitted to the joint grievance procedure (ARTICLE 7)"; that controversies over reduction in board, if not settled by the joint city committee, are to be submitted by telegram to the joint conference committee, "who shall render a final decision." Section 5 of Article 4 provides: "In the event that the Employer absorbs the business of another private, contract or common carrier, or is a party to a merger of lines, the seniority of the employees absorbed or affected thereby shall be determined by mutual agreement between the Employer and the Unions involved. Any controversy with respect to such matter shall be submitted to the joint grievance procedure (ARTICLE 7)."

The provision of the collective bargaining agreement which these plaintiffs claim was violated is Article 29(b), on the subject of "Subcontracting," which provides: "For the purpose of preserving work and job opportunities for the employees cover-

ed by this Agreement, the Employer agrees that no work or services presently performed or hereafter assigned to the collective bargaining unit will be subcontracted, transferred, leased, assigned or conveyed in whole or in part to any other plant, person, or non-unit employees unless otherwise provided in this Agreement. The Employer may subcontract work when all of his regular employees are working except that in no event shall road work presently performed or runs established during the life of this Agreement be farmed out. No yard work shall be farmed out, except for existing situations established by agreed-to past practices. * * * Alleged violation of this provision shall be submitted to the grievance procedure."

On September 21, 1962 plaintiffs filed a written grievance under the foregoing grievance procedure, protesting what they considered to be a violation of Article 29 (b), in that "Due to a change in the methods of operation by [Wade] certain work formerly performed by [plaintiffs] has been subcontracted, transferred, leased, assigned or conveyed to the TRANSPORT TERMINAL CORPORATION resulting in termination of [plaintiffs'] employment with [Wade]. In that exactly the same work is being performed as formerly with the exception that [plaintiffs'] work is now performed by a TRANSPORT TERMINAL CORPORATION employee it is a violation of the article and section above quoted from our contract." The matter was submitted to and heard by the Automobile Transporters Joint Conference Committee at a meeting held in Detroit, Michigan. After a full hearing that committee by uanimous vote decided plaintiffs' grievance adversely to them, the decision stating that in accordance with Article 4, § 5 of the agreement and consistent with its previous decisions Wade's and Terminal's employees "shall be merged on one seniority list as of their original date of hire with their respective employees." Plaintiffs made no request for rehearing or further review of the decision. Plaintiffs admit, in fact, allege, that "in accordance with the terms and conditions of said contract * * * they have exhausted their means of making a grievance and have appealed said grievance as far as the terms and conditions of said contract permit them to appeal said grievance, * * *."

Wade and Terminal have fully complied with the decision rendered by the joint conference committee.

Thereafter plaintiffs filed their petition in this case, stating a claim against Wade the gist of which is the same grievance they unsuccessfully carried to joint conference committee, namely, that Wade breached Article 29(b). They charged also that defendant Terminal conspired with Wade to breach the same by terminating their employment by Wade "sub-contracting or transferring the work formerly done by these plaintiffs to defendant Transport Terminal Corporation, thereby eliminating the work of these plaintiffs, * * *." The prayer was for back pay and other allowances claimed due under the contract, and for punitive damages.

No unfair labor practice within the exclusive jurisdiction of the National Labor Relations Board is involved. Neither side has raised any such question. The ultimate question is whether the decision of the joint conference committee adverse to plaintiffs constitutes a final and binding decision precluding prosecution in the state courts of this common law action for breach of contract and conspiracy.

■ Plaintiffs claim that they are not bound by the decision of the joint conference committee but are free to maintain this action. We disagree. The parties to the agreement and therefore these plaintiffs contemplated the possibility of this eventuality [Article 29(b)]. They agreed that such problems be determined by mutual agreement [Article 4, § 5]; agreed that alleged violations of Article 29(b) relating to the subject of this controversy "shall be submitted to the grievance procedure" [last

sentence, Article 29(b)]; agreed upon a forum and a settlement procedure [Article 7]; agreed that the employer and local union should "be bound by the terms and provisions of this Agreement" [preamble], and that any decision of the joint conference committee submitted to it under the agreement *"shall be final and conclusive and binding upon* the Employer and the Union, and *the employees involved."* (Our emphasis.) Having invoked the collective bargaining agreement as the foundation of their claim plaintiffs are bound by all of its provisions and may not pick and choose its favorable while ignoring its unfavorable provisions. The bitter goes with the sweet. In acquiring rights under Article 29(b) plaintiffs accepted all of the conditions to those rights, which include the method prescribed for the settlement of disputes in connection therewith, i. e., the grievance procedure. Williams v. Atchison, T. & S. F. Ry. Co., 356 Mo. 967, 204 S.W.2d 693, 696; Arbuckle v. Fruehauf Trailer Co., Mo.App., 372 S.W.2d 470, 473. What the Georgia Supreme Court said in a very similar factual situation applies here: "Whatever seniority rights the petitioners have arise solely out of the contract between the Union and the Employer, and may be lost or altered in accordance with the terms of the contract. * * * The provisions above referred to (an identical grievance procedure) are just as much a part of the contract as those providing for seniority. All members of a labor union who have constituted such union as their bargaining agent are bound by the terms of the contract made in their behalf by such labor union. * * *" (Parentheses added.) Pratt v. Wilson Trucking Co., 214 Ga. 385, 104 S.E.2d 915, 1. c. 916.

 The agreement to arbitrate grievance disputes is the *quid pro quo* for the agreement not to strike contained in Article 7 § 1. See Textile Workers Union of America v. Lincoln Mills of Alabama, 353 U.S. 448, 455, 77 S.Ct. 912, 1 L.Ed.2d 972. The inclusion of a provision for the arbitration of grievances in a collective bargaining agreement is a factor in achieving industrial peace, United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 578, 80 S.Ct. 1347, 4 L.Ed.2d 1409, a contracting-out case, and accords with public policy, which favors collective bargaining agreements fixing conditions of employment between labor and management. McAmis v. Panhandle Eastern Pipe Line Co., Mo. App., 273 S.W.2d 789. That policy is expressed in Section 203(d) of the Labor Management Relations Act, 1947, 61 Stat. 154, 29 U.S.C. § 173(d): "Final adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement. * * *" Commenting on this section the Supreme Court of the United States said, "That policy can be effectuated only if the means chosen by the parties for settlement of their differences under a collective bargaining agreement is given full play." United Steelworkers v. American Mfg. Co., 363 U.S. 564, 566, 80 S.Ct. 1343, 1346, 4 L. Ed.2d 1403.

The detailed grievance procedure, with a final provision for arbitration, constitutes a code agreed upon by the parties to stabilize and achieve industrial peace in this industry. Under the law hewed out by these parties for themselves a unanimous decision at the joint conference committee level settles the issue, ends the strife, and eliminates the need for resort to the arbitration provision of Article 7, § 2(c). By the "common law" of this industry (see United Steelworkers v. Warrior & Gulf Navigation Co., supra, 363 U.S., 1. c. 579, 80 S.Ct. 1347), the arbitration provisions of Article 7, § 2(c) are resorted to only when the joint conference committee cannot satisfactorily settle any grievance or disagreement. From this transcript it is apparent that a deadlocked vote in the joint conference committee as a result of inability to reach an agreement is a situation in which the matter is referred to the arbitration procedure. Otherwise its decision, whether unanimous

or by majority vote, is final and binding, and ends the matter. The unanimous vote of the joint conference committee, disallowing the grievances of these plaintiffs and settling the issue by merging the employees of Wade and Terminal on one seniority list, was an exercise of industrial self-government under the grievance machinery of this collective bargaining agreement. Under the rule of law these parties have agreed upon, the decision of the conference committee is final and binding, and this court has "no business weighing the merits of the grievance," United Steelworkers v. American Mfg. Co., supra, 363 U.S., 1. c. 568, 80 S.Ct. 1343, 1346, for in so doing we would be usurping a function which is entrusted to the arbitration tribunal. Idem, 363 U.S., 1. c. 569, 80 S.Ct. 1343. In Humphrey v. Moore, 375 U.S. 335, 84 S. Ct. 363, 11 L.Ed.2d 370, decided January 6, 1964, a joint employer-employee committee settled a similar grievance under a collective bargaining agreement. The aggrieved employees resorted to a Kentucky state court for an injunction to prevent the decision of the committee from being carried out. The state court of appeals granted a permanent injunction but the United States Supreme Court reversed, holding that the decision of a joint conference committee made under an identical grievance procedure, "reached after proceedings adequate under the agreement, is final and binding upon the parties, just as the contract says it is," citing General Drivers, Warehousemen and Helpers Union v. Riss & Co., 372 U.S. 517, 83 S.Ct. 789, 9 L.Ed.2d 918. As pointed out in Williams v. Atchison, T. & S. F. Ry. Co., supra, 204 S.W.2d, 1. c. 697, it would be a useless procedure if the parties to a dispute, having participated in the proceedings until final disposition, were not bound by the decision of the committee, but could relitigate the same question in the courts. The federal cases decided in this developing area of labor law were recently reviewed in Bonnot v. Congress of Independent Unions Local # 14, (1964) 8 Cir., 331 F.2d 355, which further supports our conclusion that the court below ruled correctly.

■ The same considerations apply to plaintiffs' action against Terminal, which was a party to the same collective bargaining agreement, and was named in the grievances filed under the grievance procedure. Cleared of any violation of Article 29(b) by the unanimous decision of the tribunal agreed upon by the parties, Terminal is not subject to this common law action for "conspiracy." A conspiracy as such is not actionable. Gruenewaelder v. Wintermann, Mo.Sup., 360 S.W.2d 678, 688. Terminal's conduct under Article 29(b) having been adjudicated lawful, a case of conspiracy to do such a lawful act would fail. Friedman Textile Co. v. Northland Shopping Center, Mo.App., 321 S.W.2d 9. Furthermore, there is no evidence of conspiracy. Plaintiffs, as adverse parties in this summary judgment proceeding under Supreme Court Rule 74.04(e), could not rest upon the mere allegations of their petition with respect to conspiracy. They were required to support them by affidavits setting forth specific facts showing that there was a genuine issue for trial. Plaintiffs filed no such affidavits.

■ Appellants claim that they are not bound by Article 7 § 2(e), and were not required to arbitrate under Article 7 § 2 (c), because of § 435.010, V.A.M.S., which provides as follows: "Any contract or agreement hereafter entered into containing any clause or provision providing for an adjustment by arbitration shall not preclude any party or beneficiary under such contract or agreement from instituting suit or other legal action on such contract at any time, and the compliance with such clause or provision shall not be a condition precedent to the right to bring or recover in such action." Chapter 435, V.A.M.S., pertains to commercial arbitration. It has no application to labor arbitration, Howard, Labor Management Arbitration, 21 Mo.Law Review 1, 1. c. 15, under the body of federal law which is being fashioned for the enforcement of collective bargaining agree-

ments in recognition of "the central role of arbitration in effectuating national labor policy." John Wiley & Sons v. Livingston, (1964) 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed. 2d 898. Appellants were bound by Article 7 § 2(e) and were required to arbitrate under Article 7 § 2(c). Humphrey v. Moore, supra.

Plaintiffs' point that defendants should not be permitted to change their theory on appeal but are bound by their legal theory that the joint conference committee decision was an arbitration decision is without merit. Defendants have not sought to change the theory upon which they submitted their defense below.

Plaintiffs contend that the decision of the joint conference committee was not an arbitration decision which would operate as a bar to the prosecution of this action because neither the word "arbitration" nor the term "arbitration award" appears in Article 7 § 2(e), but this contention has been ruled otherwise. United Steelworkers v. American Mfg. Co., supra. They argue that the grievance machinery at levels below that provided for in Article 7 § 2(c) makes no provision for an impartial arbitrator, and expresses no intention that the provisions of Article 7 § 2(d) and (e) operate as an arbitration procedure or that decisions of the joint conference committee bar recourse to the courts. This point is not meritorious. Whatever the terminology employed or omitted from the agreement, the intention of the parties to carry out the policy of the Labor Act is clear; the decisions of their "chosen instrument for the definitive settlement of grievances"—provided for in Article 7 § 2 (d) and (e)—are enforceable, and "it is of course not open to the courts to reweigh the merits of the grievance." General Drivers, Warehousemen and Helpers Union v. Riss & Co., supra.

No genuine issue of material fact exists, as plaintiffs claim. Plaintiffs did not respond, as required by Supreme Court Rule 74.04(e). As indicated above, they filed no affidavits. They failed to "set forth specific facts showing that there is a genuine issue for trial"; presented no evidence in support of their petition, and depended entirely upon the bare allegations of their petition. In these circumstances the court had no alternative but to enter judgment against plaintiffs, summary judgment being appropriate.

No error appearing, the judgment is affirmed.

WELBORN and HIGGINS, CC., concur.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.