542 F.Supp. 1118 (1982)
Mickey L. STAHLMAN, Plaintiff,
v.
The KROGER CO., and Local 610, Miscellaneous Drivers and Helpers of the International Brotherhood of Teamsters, Defendants.
No. 81-0944C(C).
United States District Court, E. D. Missouri, E. D.
June 11, 1982.
*1119 Ralph Levy, St. Louis, Mo., for plaintiff.
Earl Wilburn, John Emde, St. Louis, Mo., for defendants.

MEMORANDUM
MEREDITH, District Judge.
This matter is before the Court on the separate motions of The Kroger Co. and Local 610, Miscellaneous Drivers and Helpers of the International Brotherhood of Teamsters, defendants herein, for summary judgment.
The following facts are not in dispute. Plaintiff, Mickey L. Stahlman, was employed by Kroger as a driver from April 4, 1979 to June 17, 1980 in the bargaining unit represented by Local 610. Kroger is and was at all relevant times an "employer" within the meaning of § 2(2) of the Labor Management Relations Act, 29 U.S.C. § 152(2). Local 610 is and was at all relevant times a "labor organization" within the meaning of § 2(5) of the Labor Management Relations Act, 29 U.S.C. § 152(5), and represents employee members in the Eastern District of Missouri in an industry affecting commerce. Kroger and Local 610 were at all relevant times parties to a collective bargaining agreement covering certain of Kroger's employees, including plaintiff, for the period July 1, 1979 to July 3, 1982. The collective bargaining agreement contained a three-step grievance procedure set forth in Section 8.1 thereof. Section 8.1 provides that the Step 3 Committee has the power to settle a grievance, and such settlement shall be final. Should the Committee be unable to reach an agreement, Section 8.2 provides that the dispute may be submitted to arbitration.
Plaintiff was involved in an accident on June 11, 1980 while on duty. Kroger immediately suspended plaintiff pending an investigation of the accident. On or about June 17, 1980 Kroger and Local 610 held a meeting pursuant to Step 2 of the grievance procedure to discuss the accident and to determine whether plaintiff should be disciplined under the terms of the collective bargaining agreement. Plaintiff was present. At the conclusion of the meeting, representatives of Kroger notified plaintiff and Local 610 of its decision to discharge plaintiff.
Thereafter, a formal grievance contesting said discharge was filed pursuant to Step 3 of the grievance procedure. A hearing was held before the Step 3 Committee on July 15, 1980. Present were plaintiff, representatives of Kroger and Local 610, and the members of the Step 3 Committee. After the hearing was concluded, the Committee announced its decision denying plaintiff's grievance and upholding the discharge.
More than one year later, on August 6, 1981, plaintiff filed this action seeking damages and reinstatement to his former position. Plaintiff alleges that Kroger breached the collective bargaining agreement with Local 610 by unlawfully and wrongfully discharging him and that Local 610 breached its duty of fair representation through the manner in which it represented him during the grievance process. The Court has subject matter jurisdiction over plaintiff's claims under § 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a).
As grounds for their motions for summary judgment, defendants argue that plaintiff's claims are barred by the applicable statute of limitations. Congress has not enacted a statute of limitations for actions *1120 brought under § 301 of the Labor Management Relations Act. Whether a § 301 action is timely is to be determined, as a matter of federal law, by reference to the appropriate state statute of limitations. United Auto Workers v. Hoosier Cardinal Corp., 383 U.S. 696, 704-705, 86 S.Ct. 1107, 1112-1113, 16 L.Ed.2d 192 (1966). Previously, the rule in this circuit was that the applicable statute of limitations in a § 301 suit brought against an employer alleging breach of a collective bargaining agreement was § 516.120, R.S.Mo., which provides that all actions on written contracts shall commence within five years. Butler v. Local U. 823, Int. Bro. of Teamsters, 514 F.2d 442 (8th Cir.), cert. denied, 423 U.S. 924, 96 S.Ct. 265, 46 L.Ed.2d 249 (1975). Where such a suit was brought in conjunction with a claim that the union breached its fair representation duty to pursue the employee's grievance, the same limitations period applied to both claims. Id., 514 F.2d at 448.
This rule was changed by the Supreme Court's decision in United Parcel Service, Inc. v. Mitchell, 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981). In that case the court held that the appropriate limitations period for actions brought under § 301 against both a union for breach of its duty of fair representation and against an employer for breach of a collective bargaining agreement is the period during which a party could move under state law for vacation of an arbitration award. This is so even where the grievance is terminated prior to final arbitration. Fields v. Babcock & Wilcox, 108 LRRM 3150, 3151 (W.D.Pa. 1981).
Plaintiff's present claims accrued on July 15, 1980, when the Step 3 Committee denied his grievance. Butler v. Local U. 823, Int. Bro. of Teamsters, supra, 514 F.2d at 449. At that time the applicable Missouri statute for vacation of arbitration awards was § 435.120, R.S.Mo.,[1] which required that an application to vacate or modify an award be made to the court at the next term after publication of the award[2] Section *1121 478.205, R.S.Mo. provides that state circuit court terms commence on the second Mondays of February, May, August, and November. Therefore, under the Mitchell rule, plaintiff should have brought this action by August 11, 1980.
The Supreme Court did not announce its opinion in Mitchell until April 20, 1981, over eight months later. The question therefore arises as to whether it should be applied retroactively. The Supreme Court summarized the factors to be considered in deciding whether to give retroactive effect to a new decision in Chevron Oil Co. v. Huson, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). They are: (1) whether the decision sought to be applied establishes a new legal principle, (2) whether retroactive application furthers or retards the operation of the rule, and (3) whether retroactive operation will cause substantial injustice or hardship. Id. at 106-107, 92 S.Ct. at 355-356.
In this case there is no question but that Mitchell directly overruled the precedent established by the Eighth Circuit in Butler v. Local U. 823, Int. Bro. of Teamsters, supra, on the applicable limitations period in § 301 actions. Thus, it represents a clear break with the past in an area of law which, for more than six years, was thought to be well-settled here. Cf. Delcostello v. Int. Bro. of Teamsters, 524 F.Supp. 721, 724 (D.Md.1981) (no "clear break with the past" where Fourth Circuit had never directly addressed the question decided in Mitchell).
Equally certain, however, is that application of Mitchell in this case will have precisely the effect intended by the Supreme Court, which is to provide for the "relatively rapid disposition of labor disputes." United Auto Workers v. Hoosier Cardinal Corp., supra, at 707, 86 S.Ct. at 1114, quoted in Kikos v. Int. Bro. of Teamsters, 526 F.Supp. 110, 115 (E.D.Mich.1981). Moreover, retroactive application of Mitchell here would not be unjust. True, retroactive application of Mitchell will bar plaintiff from litigating the substantive issues of his case. Nevertheless, this, alone, is not dispositive of the third criterion under Chevron Oil, supra. In Mitchell itself the Supreme Court applied its decision in such a way as to bar the plaintiff's recovery. Similarly, in Kikos v. Int. Bro. of Teamsters, supra, a district court held that no substantial injustice would result from retroactive application of Mitchell even though the decision was not rendered until after the plaintiff's claim was filed and costly discovery had taken place.
This Court believes that the approach taken in Kikos v. Int. Bro. of Teamsters, supra, is too severe. If it were applied here, the Court would, in effect, be saying that plaintiff "slept on his rights" at a time when he could not have known the limitation that the law imposed upon him. Chevron Oil, supra, at 108. Not surprisingly, the Kikos approach has not been universally followed. See, e.g., Singer v. Flying Tiger Line, 652 F.2d 1349 (9th Cir. 1981) (Mitchell not applied to action filed two and a half years before decision announced where district court had already ruled on the merits of the case and it had been appealed). However, the Court believes that Mitchell should have placed plaintiff on notice that the limitations period for his claim would be drastically shortened. After Mitchell was announced, plaintiff should, at a minimum, have attempted to file this action prior to the commencement of the next term of the circuit court, as directed by § 435.120. This would have been May 11, 1981. He did not. Instead he chose to rely on clearly overruled precedent and delayed bringing his § 301 claims for another three months. Such reliance was unreasonable. Under these circumstances, retroactive application of Mitchell is neither inequitable nor unduly harsh.
For the foregoing reasons, this Court now holds that plaintiff's claims are untimely. Accordingly, defendants' motions for summary judgment shall be and are granted. This cause will be dismissed with prejudice at plaintiff's cost.
NOTES
[1] This was superceded when Missouri enacted the Uniform Arbitration Act, § 435.350-435.470, R.S.Mo., which provides at § 435.405.2 that applications to vacate an award must be made within ninety days after delivery of a copy of the award to the applicant. This provision does not control here, however, because the Act expressly provides that it applies only to agreements made subsequent to its effective date, August 13, 1980. § 435.455, R.S.Mo.
[2] Plaintiff argues that § 435.120 is inapplicable in this case even under Mitchell because, unlike the New York Arbitration Law involved in that case, the Missouri arbitration statute does not govern labor disputes. In support of this position plaintiff cites only Grubb v. Leroy L. Wade & Son, Inc., 384 S.W.2d 528 (Mo.1964). In Grubb union members filed suit in state court against their employer for breach of their collective bargaining agreement. The plaintiffs had previously filed a grievance under the collective bargaining agreement, making the same allegations as in the lawsuit. The grievance was denied by a joint employer-employee committee. The collective bargaining agreement required in such cases that the dispute next be submitted to arbitration. Instead, plaintiffs brought a court action, invoking § 435.010, R.S.Mo. which provides that the existence of an arbitration clause in a contract shall not preclude a party under that contract from instituting suits or other legal action on the contract.

The Missouri Supreme Court rejected plaintiffs' reliance on that statute, holding that they were bound by the arbitration clause in the collective bargaining agreement. Wrote the court at 534-535:
"Chapter 435, V.A.M.S. pertains to commercial arbitration. It has no application to labor arbitration, Howard, Labor Management Arbitration, 21 Mo.Law Review 1, 1. c. 15, under the body of federal law which is being fashioned for the enforcement of collective bargaining agreements in recognition of `the central role of arbitration in effectuating national labor policy.' John Wiley & Sons v. Livingston, 376 U.S. 543 [84 S.Ct. 909, 11 L.Ed.2d 898] (1964)."
While the language of this decision is quite broad, this Court interprets it as simply reaffirming the well-recognized principle that federal labor law has, by and large, preempted the field of labor relations. See, e.g., Linn v. Plant Guard Workers, 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966). Thus, absent a compelling local interest or where the activity regulated is merely a peripheral concern of the Labor Management Relations Act, state statutes will not be allowed to compromise the rights and obligations guaranteed by federal labor laws. Id. at 59, 86 S.Ct. at 661.
In the case at bar, there is no preemption problem because, as noted, Congress has not enacted a federal statute of limitations for § 301 actions, and application of the state statute here, unlike Grubb, would not contravene federal labor policy. Accordingly, the Court believes that Grubb does not control and that § 435.120 applies.