## SOUTHWESTERN BELL TELEPHONE COMPANY, Respondent/Cross-Appellant,

v.

## Richard BUIE, individually and d/b/a American Audio Center, Appellant/Cross-Respondent.

### Nos. 53455, 53459.

Missouri Court of Appeals, Eastern District, Division Three.

Aug. 16, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 12, 1988.

Application to Transfer Denied Oct. 18, 1988.

Richard B. Blanke, University City, for appellant/cross-respondent.

James A. Daugherty, St. Louis, for respondent/cross-appellant.

KELLY, Judge.

This is an action for breach of contract brought by cross-appellant Southwestern Bell Telephone Co. against cross-respondent Richard Buie, for the alleged failure to pay for a Yellow Pages Telephone Directory advertisement. Buie appeals from the trial court's dismissal of counts II and IV of Buie's four count amended counterclaim.

This case is before us a second time following our remand in the original case of *Southwestern Bell Telephone Co. v. Buie*, 689 S.W.2d 848 (Mo.App.1985). In the original case, Southwestern Bell sued Buie for damages for a breach of a Yellow Page advertising contract. Buie counterclaimed in five counts, two compulsory (Counts I and II) and three permissive (Counts III, IV and V). Buie alleged intentional misrepresentation in Count I and breach of the alleged advertising contract in Count II. Buie, as an employee of Southwestern Bell, brought three additional counts by permissive counterclaim which alleged breach of a collective bargaining agreement in Count III, prima facie tort in Count IV relating to the acts in Count III, and prima facie tort for injury suffered by Buie's wife in Count V.

Buie had been suspended for nine days without pay and charged back $11,800.00 in commissions for allegedly aggregating customer advertising accounts improperly. After Buie's suspension and subsequent chargeback of commissions, he pursued the grievance procedures contained in the applicable Collective Bargaining Agreement between Southwestern Bell, the employer, and Communication Workers of America, Buie's union, and ultimately submitted the dispute to binding arbitration. The arbitration hearing was held on February 1, 1983, and on February 25, 1983, arbitrator Wilbur C. Bothwell upheld the suspension and denied Buie's grievance.

Southwestern Bell's motion to dismiss Counts III, IV and V of the counterclaim alleged that the trial court had no subject matter jurisdiction. Southwestern Bell's suggestions in support of its motion to dismiss stated: (1) Buie may not pursue litigation of the same dispute previously resolved by binding arbitration; (2) Buie did not pursue the grievance-arbitration procedures with respect to the chargeback of commissions within the time period specified in the Collective Bargaining Agreement; and (3) Buie's Count V is premised on plaintiff's treatment of Buie's wife, an employee of Southwestern Bell, and Buie is not authorized to act on behalf of his wife. The trial court sustained Southwestern Bell's motion without stating reasons.

On appeal to this court, we affirmed the trial court's order dismissing Count V and

reversed the trial court's order dismissing Counts III and IV. The cause was remanded with directions to reinstate Counts III and IV.

The cause then proceeded to jury trial. After Buie presented his case-in-chief, the trial court sustained Southwestern Bell's motions for directed verdicts with respect to Counts II and IV of Buie's counterclaim. The court submitted Southwestern Bell's single count for breach of contract to the jury as Verdict A; Counts I and III of Buie's counterclaim were submitted as Verdicts B and C, respectively.

The jury returned Verdict A in favor of Southwestern Bell in the sum of $3,552.79. Verdict B was returned in favor of Buie for zero dollars actual damages and zero dollars punitive damages. Verdict C was returned in favor of Buie for $50,000.00. The court then entered judgment on the three verdicts.

Both parties filed timely post-trial motions. On April 2, 1987, Southwestern Bell filed its post-trial motions, including its motion for new trial on Verdict C, (Count III of Buie's counterclaim for breach of the Collective Bargaining Agreement). One day later, on April 3, 1987, Buie filed his post-trial motions, including his motion for new trial on Verdict A, Verdict B, and his claim for prima facie tort (Count IV).

On July 2, 1987, ninety-one days after Southwestern Bell filed its post-trial motion, the trial court purported to grant Southwestern Bell's motion for new trial on Count III of Buie's counterclaim (Verdict C). Also on July 2, 1987, the trial court denied Buie's post-trial motions.

Southwestern Bell argues that the trial court had no jurisdiction of Buie's claims because: (1) all claims are subject to the sole and exclusive provisions of federal law pursuant to the National Labor Relations Act; (2) all claims relating to the labor dispute are barred by the statute of limitations; and (3) all claims involving the labor dispute may not be pursued in litigation by Buie because the same dispute was previously resolved by binding arbitration.

Buie appeals from the trial court's rulings that: (1) directed a verdict against Buie on Count IV of his counterclaim; (2) purported to order Southwestern Bell a new trial on Count III of Buie's counterclaim; and (3) denied Buie's motion for new trial on Count I of his counterclaim. The two appeals are consolidated.

We affirm in part and reverse and remand in part.

■ Initially we address Southwestern Bell's claims alleging that the trial court had no jurisdiction for the reason they are subject to the sole and exclusive provisions of federal law pursuant to § 301 of the Labor Management Relations Act of 1947. We rely on the recent decision of *Lingle v. Norge Division of Magic Chef, Inc.*, —— U.S. ——, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). In *Lingle*, on December 5, 1984, the petitioner notified her employer that she had been injured in the course of her employment and requested compensation for her medical expenses pursuant to the Illinois Workers' Compensation Act. On December 11, 1984, the employer discharged petitioner for filing a false worker's compensation claim. The union representing petitioner filed a grievance pursuant to a collective-bargaining agreement that protected employees from discharge except for "just" cause and that provided for arbitration of disputes between the employer and any employee concerning the effect or interpretation of the agreement. While arbitration was proceeding, petitioner filed a retaliatory discharge action in the Illinois state court, alleging that she had been discharged for exercising her rights under the Illinois worker's compensation laws. Respondent removed the suit to the Federal District Court on the basis of diversity of citizenship, and filed a motion to dismiss the case as pre-empted by § 301 of the Labor Management Relations Act of 1947. The court dismissed the complaint as pre-empted, concluding that the retaliatory-discharge claim was "inextricably intertwined" with the collective-bargaining provision prohibiting discharge without just cause, and that allowing the state-law action to proceed would undermine the arbitration procedures in the collective-bargain-

ing contract. The Court of Appeals affirmed.

The United States Supreme Court reversed, stating, "In sum, we hold that an application of state law is pre-empted by § 301 of the Labor Relations Act of 1947 only if such application requires the interpretation of a collective-bargaining agreement." —— U.S. at ——, 108 S.Ct. at 1885.

Applying *Lingle* to the case at bar, we find no interpretation of the Collective Bargaining Agreement by the trial court. Furthermore, the record discloses that the Collective Bargaining Agreement, although marked, was never received into evidence. Therefore, relying on *Lingle,* we hold that since the Collective Bargaining Agreement has not been interpreted by the trial court, an application of state law is not pre-empted by § 301 of the Labor Management Relations Act of 1947. Point denied.

■ Southwestern Bell next asserts that all claims relating to the labor dispute are barred by the statute of limitations under the National Labor Relations Act. In Southwestern Bell's reply to Buie's counterclaim, Southwestern Bell alleges as a defense to Count III of Buie's counterclaim, that "Plaintiff states as an affirmative defense, that defendant's counterclaim, Count III, is barred by the statute of limitations."

■ The statute of limitations is a defense which must be set forth affirmatively. Rule 55.08. A party desiring to avail himself of the statute of limitations must plead the particular statute upon which he relies. In *Knisely v. Leathe,* 256 Mo. 341, 166 S.W. 257 (1914), this Court held that one seeking to take advantage of the statute of limitations "must plead the very provision on which he depends." 166 S.W. at 261. In *Gibson v. Ransdell,* 188 S.W.2d 35 (Mo.1945), where the bar of limitations was invoked but an inapplicable section was specified, it was held that the cause could not be ruled upon the basis of that statute of limitations, and reannounced the rule that "... the particular statute relied upon must be pointed out," 188 S.W.2d at 37, citing *Knisely v. Leathe. Modine Manufacturing Company v. Carlock,* 510 S.W.

2d 462, 467 (Mo.1974); *Tudor v. Tudor,* 617 S.W.2d 610, 613[4] (Mo.App.1981). Accordingly, since Southwestern Bell failed to specifically plead the particular statute upon which it relied, we do not reach and do not decide this issue.

■ Southwestern Bell next argues that Buie may not pursue litigation of the same dispute previously resolved by binding arbitration. In light of our prior holding in the first appeal of this case, we conclude the issue was already adjudicated in *Southwestern Bell Telephone Co. v. Buie,* 689 S.W.2d 848 (Mo.App.1985). In that case on appeal we noted:

Questions involving a labor union's duty of fair representation are governed by federal law. *Roach v. Consolidated Forwarding Co.,* 665 S.W.2d 675, 681 (Mo.App.1984). The court in *Grubb v. Leroy L. Wade & Son, Inc.,* 384 S.W.2d 528 (Mo.1964) decided that the union members were bound by their contractual agreement and had no remedy to relitigate their claims in the courts. The *Grubb* court did not, however, reach the question of the effect of an allegation that the union breached its duty of fair representation in the required arbitration within the labor contract. *Grubb* and its progeny are sound for the proposition that submission of a grievance to labor arbitration under a Collective Bargaining Agreement is binding on the parties and bars relitigation. These cases do not address the issue in the instant case and are consequently not decisive of the present dispute.

689 S.W.2d at 852[6].

■ We will not readdress an issue previously decided in an earlier appeal. A decision by our court is the law of the case on all points raised and decided and our decision continues to govern throughout all subsequent proceedings both in the trial and the appellate courts and no issue decided in the first appeal will be readdressed in the second. *Brooks v. Kunz,* 637 S.W.2d 135, 138[3] (Mo.App.1982). Point denied.

■ Southwestern Bell also asserts that the trial court lacked jurisdiction over the

employer and the cause of action because Buie failed to join the union as a party. Southwestern Bell relies on *Riddle v. Trans World Airlines, Inc.*, 512 F.Supp. 75 (W.D.Mo.1981).

In *Riddle*, an airline employee sued his employer for wrongful termination in violation of a collective bargaining agreement and failed to join the union as a party. The court held that "in a lawsuit *arising under the Railway Labor Act*, the plaintiff, in order to bring suit directly against his employer *without first exhausting his administrative remedies*, must join the union as a party defendant and allege that the union and his employer acted in concert together to deprive him of his right to fair representation." (emphasis added). 512 F.Supp. at 80[4].

*Riddle* is distinguishable from the case at bar, in that: (1) unlike the Railway Labor Act, the National Labor Relations Act does not prescribe administrative remedies in lieu of judicial remedies (*See Brown v. Missouri Pacific R. Co.*, 720 S.W.2d 357, 359[5] (Mo. banc 1986)); and (2) in a § 301 hybrid action, it is not necessary to show that the union and the employer were acting in concert but merely that the union breached its duty of fair representation and the employer breached the collective bargaining agreement with the employee.

We rely on *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). In *Vaca*, the United States Supreme Court stated:

> For these reasons, we think the wrongfully discharged employee may bring an action *against his employer*, in the face of a defense based upon the failure to exhaust contractual remedies, provided the employee can prove that the union as bargaining agent breached its duty of fair representation in its handling of the employee's grievance. (footnote omitted). We may assume for present purposes that such a breach of duty by the union is an unfair labor practice, as the NLRB and the Fifth Circuit have held. The employee's suit *against the employer*, however, remains a § 301 suit, and the jurisdiction of the courts is no more destroyed by the fact that the employee, as part and parcel of his § 301 action, finds it necessary to prove an unfair labor practice by the union, than it is by the fact that the suit may involve an unfair labor practice by the employer himself. The court is free to determine whether the employee is barred by the actions of his union representative, and, if not, to proceed with the case. *And if, to facilitate his case, the employee joins the union as a defendant, the situation is not substantially changed.*
>
> . . . .
>
> *And, insofar as adjudication of the union's breach of duty is concerned, the result should be no different if the employee, as Owens did here, sues the employer and the union in separate actions.* (emphasis added).

*Vaca*, 87 S.Ct. at 914–915[22, 23].

The instant case falls squarely within *Vaca*. We find that the Communication Workers of America Union is not an indispensable party herein. Accordingly, Southwestern Bell's point is denied.

■ We now address Buie's contention that the trial court lacked jurisdiction to enter the order of July 2, 1987, which purported to grant Southwestern Bell's motion for new trial on Verdict C (Count III of defendant's counterclaim). We agree.

Southwestern Bell filed a timely motion for new trial on April 2, 1987. The trial court then purported to grant Southwestern Bell's motion on July 2, 1987, ninety-one days after the motion was filed.

The trial court lacked jurisdiction to enter the order of July 2, 1987, because the ninety day period provided by Rule 78.06 had expired. Rule 78.06 limits the time within which the trial court may rule on a motion for new trial to ninety (90) days after the motion is filed. "If the motion for new trial is not passed on within ninety days after the motion is filed, it is denied for all purposes." Rule 78.06. Pursuant to Rule 78.06, the trial court retained control over Southwestern Bell's motion for new trial only until July 1, 1987, the ninety-day period following the filing of the mo-

tion. The trial court granted Southwestern Bell's motion for new trial; however, since the court exceeded its jurisdiction, the ruling was without force or effect. Accordingly, Southwestern Bell's motion for new trial was deemed denied by operation of law on July 1, 1987, ninety days after it was filed.

■ Southwestern Bell contends that it is entitled to a new trial because the trial court erred in giving certain instructions offered by Buie, specifically Instruction 16, the verdict-directing instruction on breach of the Collective Bargaining Agreement. Instruction 16 is set forth below:

### Instruction No. 16

Your verdict must be for defendant on the claim of defendant Richard Buie against plaintiff Southwestern Bell Telephone Company for breach of the Collective Bargaining Agreement, if you believe:

First, plaintiff and the Communications Workers of America, on behalf of defendant, entered into an agreement whereby defendant was to perform his duties as a directory representative and plaintiff was to suspend defendant only for just cause and to chargeback defendant's earned commissions only when errors were made by defendant causing an adjustment to be made in the advertising rate or where advertising was sold but not published due to errors for which the defendant was responsible, and

*Second, that the Communications Workers of America violated its duty to defendant of fair representation under said Agreement, and*

Third, defendant performed his duties as a directory representative, and

*Fourth, plaintiff failed to perform said agreement, and*

Fifth, defendant was thereby damaged.

As used in this instruction, the term "just cause" means a real cause or basis for suspension as distinguished from an arbitrary whim or caprice—that is, a cause or ground that a reasonable employer, acting in good faith under the employment agree-

ment here in question, would regard as good and sufficient reason for suspending the services of an employee. (emphasis added).

Instruction No. 16, which is not an M.A.I. instruction, submitted to the jury Buie's theory against Southwestern Bell for breach of the Collective Bargaining Agreement.

■ The instruction is confusing, in that it fails to advise the jury specifically how plaintiff failed to perform the Agreement. The evidence shows that Southwestern Bell participated in the grievance and arbitration procedures at the request of Buie and his union, and performed its obligations under the Collective Bargaining Agreement. The fourth paragraph, "Plaintiff failed to perform said agreement," gave the jury a roving commission to speculate how plaintiff breached the Collective Bargaining Agreement. Instructions which confuse and mislead are prejudicially erroneous. *Hall v. Cooper*, 691 S.W.2d 507, 510[6] (Mo.App.1985); *Long v. REA Express Company*, 573 S.W.2d 62, 66[7, 8] (Mo.App.1978).

The instruction is also erroneous in that it improperly attempts to hold Southwestern Bell responsible for the allegedly negligent acts of a third party, the Communications Workers of America, which is not a party to this litigation. The second paragraph of the instruction reads as follows: "Second, that the Communications Workers of America violated its duty to defendant of fair representation under said Agreement." This language improperly imposes a duty on Southwestern Bell to insure that the Communications Workers of America fairly represent each of its union's members during the grievance and arbitration process.

Instruction No. 16 is also erroneous in that it did not require a finding that Southwestern Bell had breached a duty under the Collective Bargaining Agreement. Although the trial court lacked jurisdiction to decide Southwestern Bell's motion for new trial after the ninety-day period had elapsed, its ruling on the merits was other-

wise proper since Instruction No. 16 was prejudicially erroneous. Accordingly, an order is entered granting Southwestern Bell's motion for a new trial on Verdict C (Count III of defendant's counterclaim).

■ We now address Buie's appeal. Buie first contends that the trial court erred in directing a verdict for Southwestern Bell on Count IV of his counterclaim and in refusing to submit his prima facie tort case to the jury because he made a submissible case. We disagree.

Count IV seeks actual and punitive damages for plaintiff's prima facie tort which constitutes the breach of contract action alleged in Count III. Buie incorporated the allegations of Paragraph 4 of Count III into Count IV and pleads that "said suspension and chargeback was done by Plaintiff with the intent to cause damage to Defendant; that Defendant was thereby damaged; and that said acts were done in the absence of any justification or with insufficient justification for the Plaintiff's acts."

Defendant claims actual damages from the unjust suspension for his lost wages and commission and for the chargeback commission. Defendant states that plaintiff's conduct was intentional and without just cause or excuse and that plaintiff "should be punished to deter it and others from like conduct, by an assessment of punitive damages."

■ The record reflects that the trial court directed a verdict against Buie and refused to submit Buie's prima facie tort case (Count IV). His reasons given were as follows:

Insofar as Count IV is concerned, I'm refusing to submit that Count to the jury for several reasons. One, the verdict directing instruction that was offered on that particular count by the defendant is, in my opinion, improper in form; and I was not offered another one by the defendant to submit to the jury; and, therefore, it was my conclusion that I would not submit that particular count without a proper instruction.

. . . .

Let the record further show that it was the opinion of the court that this count is not submissible and that the evidence did not warrant a submission for this count.

That as a matter of law, consistent with the case of *Brown v. Missouri Pacific Railroad,* 720 S.W.2d 357, a Missouri Banc case, that defendant failed to make a case upon which this case of prima facie tort could be submitted under the evidence.

The elements of a prima facie tort are: (1) an intentional lawful act by the defendant; (2) an intent to cause an injury to the plaintiff; (3) injury to the plaintiff; and (4) an absence of any justification or an insufficient justification for the defendant's act. *Porter v. Crawford & Co.,* 611 S.W.2d 265, 268[3] (Mo.App.1980).

■ When determining whether or not a plaintiff has made a submissible case, the plaintiff's evidence is presumed to be true and the plaintiff is given the benefit of all reasonable and favorable inferences drawn from the evidence. *Burns v. Schnuck Markets, Inc.,* 719 S.W.2d 499, 500[1] (Mo. App.1986). However, the court is not required or permitted to supply missing evidence or to give the plaintiff the benefit of unreasonable, speculative, or forced inferences. *Hayes v. National Super Markets, Inc.,* 612 S.W.2d 819, 821[2] (Mo.App.1981). The evidence and inferences must establish every element and not leave any issue to speculation. *Meyers v. City of Louisiana,* 637 S.W.2d 219, 221[2] (Mo.App.1982).

We note at the outset that no case resulting in a verdict for the plaintiff on a prima facie tort theory has been affirmed by the Missouri appellate courts. *Brown v. Missouri Pacific R. Co.,* 720 S.W.2d 357 (Mo. banc 1986). In order to make a submissible case under a prima facie tort thoery, Buie must show that Southwestern Bell *lacked any justification or had insufficient justification* for suspending Buie and charging back his commissions.

The record indicates that 91% of Buie's accounts, including new business and increased business, had disconnected shortly after publication and cancelled their advertising. Buie had no explanation for the high rate of cancellation. Tim Morrisey, the district manager of directory sales for

Southwestern Bell, suspected improper practices by Buie, or collusion by Buie and customers. Southwestern Bell suspended Buie pending an investigation.

The record further indicates that three supervisors at Southwestern Bell investigated the accounts handled by Buie and discovered that Buie's conduct possibly violated the long established company policy prohibiting improper commingling of unrelated business accounts where there was no common ownership. A new account should not be associated with an account already assigned to a directory representative unless there was a common ownership of the two or more businesses. Defendant testified that there were no written rules regarding the company policy and that he was never instructed on an approved method for determining whether common ownership existed. However, Adrian Kelly, the regional manager in charge of sales operations at Southwestern Bell, testified that the policy did exist.

We agree with the trial court that Buie has failed to present evidence to support a finding that Southwestern Bell suspended him and chargedback commissions without any justification or with insufficient justification. Buie has ignored this essential element which is required to make a submissible case in prima facie tort; as such, the trial court properly directed a verdict in Southwestern Bell's favor on Count IV of Buie's counterclaim.

Buie next contends that the trial court erred in denying his motion for new trial on Count I of his amended counterclaim. Buie alleged intentional misrepresentation in Count I which was submitted to the jury as Verdict B. Verdict B was returned in favor of Buie for zero dollars actual damages and zero dollars punitive damages.

■■■ Buie argues that the trial court erred by refusing to permit him to answer the following questions during direct examination at trial:

> BUIE'S ATTORNEY: Mr. Buie, if you had known the correct figures, if you had known that only a million of the books were going to be printed instead of a million eight, that less than a million were distributed instead of a

minimum of a million four hundred thousand, would you still have purchased the ad?

> SOUTHWESTERN BELL'S ATTORNEY: Objection, your honor. That calls for speculation on the part of the witness.

> THE COURT: Sustained.

> ....

> BUIE'S ATTORNEY: What have you lost as a result of your reliance? What have you lost? What are your damages?

> BUIE: I lost six thousand——

> SOUTHWESTERN BELL'S ATTORNEY: Objection. Your honor. This is not a proper foundation that has been laid for someone who did not run the business on a day-to-day basis or prepare the books or records. Anything of that nature as to the hearsay nature whatever the witness would testify to.

Buie's testimony was hearsay in that Michael Koenig was the person responsible for the operation of the business. Buie testified that Koenig told him that during the business' operation, the business sold approximately $68,000.00 in inventory. Buie states in his brief that he was not permitted to testify regarding the measure of damages because he had limited knowledge of the business, and "he admittedly failed to lay a proper foundation of personal knowledge regarding lost profits." Buie admitted that he had no knowledge of damages and loss of profits. Since Buie did not run the business on a day-to-day basis and prepare the financial statements and company records, he could only rely on Koenig's information to speculate any alleged damages.

Furthermore, Buie could only speculate whether he would still have signed a contract and purchased the advertisement if he had been presented certain statistical information regarding the number of Yellow Page directories to be distributed in the metropolitan St. Louis area for the three or four years prior to when his advertising was to appear.

We find that the trial court properly sustained Southwestern Bell's objection to defense counsel's direct examination of Buie

on the issue of damages. Accordingly, the trial court properly denied Buie's motion for new trial on Count I of his amended counterclaim.

On Buie's appeal, we affirm the trial court's rulings that directed a verdict against Buie on Count IV of his counterclaim and that denied Buie's motion for new trial on Count I of his amended counterclaim.

On Southwestern Bell's cross-appeal, we reverse and remand for new trial on Verdict C (Count III of Buie's counterclaim) in that Instruction No. 16 was prejudicially erroneous.

Neither party has appealed the award of $3,552.79 in favor of Southwestern Bell in its single count for breach of contract. That portion of the judgment is not before us on appeal and remains as entered.

As a final matter, we deny Buie's motion to dismiss Southwestern Bell's cross-appeal based on its failure to specifically designate which part or parts of the trial court's judgment it is appealing.

KAROHL, P.J., concurs.

SMITH, J., concurs in result.