**Ida Hankin REED, Respondent,**

**v.**

**Herbert M. ROPE, Personal Representative of the Estate of Andrew Reed, Deceased, Appellant.**

**No. WD 43362.**

Missouri Court of Appeals,
Western District.

July 30, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 1, 1991.

Application to Transfer Denied
Nov. 19, 1991.

Donald E. Raymond, Raymond, Raymond & Minton, Kansas City, for appellant.

William C. Partin, Matt Partin, Partin & Partin, P.C., Kansas City, for respondent.

Before TURNAGE, P.J., and LOWENSTEIN, ULRICH and BRECKENRIDGE, JJ.

ULRICH, Judge.

Herbert M. Rope, Personal Representative of the Estate of Andrew Reed, Deceased, appeals from the judgment of the Probate Division entered on the jury verdict in favor of Ida Hankin Reed and against the estate of her late husband. Mrs. Reed was awarded $166,233 for breaches to the antenuptial agreement signed by Mr. and Mrs. Reed approximately twenty-five years before the marriage was terminated by Mr. Reed's death. The actionable portions of the agreement provided that Mr. Reed would supply his prospective bride "a suitable home and provisions from his funds and that there shall be no obligation on [her] part to provide any funds therefor...." The agreement also

provided that if Mr. Reed predeceased his prospective wife, she would have the right to "live and reside in [his] home for the rest of her natural life...." Mrs. Reed's claim alleged breach of her husband's promise to provide a suitable home and provisions and breach of his promise to provide a life estate in the house he built for the couple when they were married. The judgment is affirmed.

Mr. Rope contends that the judgment is erroneous and asserts five points on appeal. He alleges (1) the applicable statute of limitation precludes much of Mrs. Reed's claim and that the trial court erroneously permitted the introduction of evidence regarding claims outside the statutory period; (2) the expert economist who testified in behalf of Mrs. Reed about the damages she sustained from Mr. Reed's breach of the antenuptial agreement used erroneous data to make his calculations and the trial court should have stricken his testimony; (3) the expert economist failed to assess, in the manner prescribed by law, the loss of Mrs. Reed's life estate in Mr. Reed's house; (4) the court erroneously permitted Mrs. Reed's expert economist to utilize summaries, prepared by Mrs. Reed's attorney, of Mr. Reed's tax returns for several years; and (5) the evidence that Mrs. Reed performed her wifely duties over the years of the marriage was irrelevant, prejudicial and erroneously admitted.

This case is not unfamiliar to this court. Ida Hankin Reed filed her petition in the circuit court to discover assets of Mr. Reed's estate. Mr. Rope pleaded the validity of the antenuptial agreement in his answer, and Mrs. Reed filed a reply raising as an affirmative defense the invalidity of the agreement. Mr. Rope then filed in this court a petition for a writ of prohibition seeking to prohibit Judge John A. Borron, Jr., from conducting a jury trial on Mrs. Reed's petition to discover the assets of Mr. Reed's estate prior to determining the validity of her equitable defense that the antenuptial agreement was invalid and on other issues. This court made absolute its writ of prohibition, finding that the equitable issue of the validity of the antenuptial agreement should first be determined

by the trial court before submitting to a jury the petition to discover assets which sought damages against Mr. Reed's estate for his alleged failure to perform the agreement. *See State ex rel. Rope v. Borron,* 762 S.W.2d 427 (Mo.App.1988). The trial court then determined the antenuptial agreement valid. Mrs. Reed's conditional claim for breach of the antenuptial agreement was then tried to a jury. The jury awarded Mrs. Reed $166,233, and judgment was entered. Appeal is taken from that judgment.

Ida Hankin Reed immigrated from Russia to Kansas City, Missouri, in 1912. She resided with her parents and attended school through the sixth grade when she quit school and became employed to assist her parents financially. In 1925, she married Louis Hankin. Two children were born of the marriage. In 1931, Mr. and Mrs. Hankin moved to Nevada, Missouri, and began a clothing store business. The couple operated the clothing store together until 1946 when Mr. Hankin died. His wife continued to operate the clothing store until 1949 when she hired a manager and moved to Kansas City. Thereafter, Mrs. Reed commuted to Nevada each week by bus.

Mrs. Hankin met Andrew Reed in 1957. Mr. Reed owned and operated an automobile wrecking business in Kansas City. Mr. Reed was a widower and the father of three adult children. Mrs. Hankin and Mr. Reed saw each other approximately twice a week over a period of two and a half years. In early 1960 the couple agreed to marry. Mr. Reed asked Mrs. Hankin to give up the store saying that he would "make a living for [her and] provide a home and all necessities of life." He said, "I want a wife to be home when I come home, I want her to be there." Mrs. Hankin closed her store.

Approximately one week prior to May 22, 1960, the wedding date, Mr. Reed informed Mrs. Hankin that he wanted a prenuptial agreement. Pursuant to Mr. Reed's request, Charles Rubins, an attorney and Mrs. Hankin's brother, prepared the agreement. The proposed agreement was reviewed by Mr. Reed's attorney, and the

document was signed by Mr. Reed and Mrs. Hankin.

The couple were married on May 22, 1960, and immediately began residing in the house constructed for them by Mr. Reed but apparently titled in his name only. Mrs. Reed furnished the house with furniture that she had acquired prior to their marriage.

Sometime in 1961, Mr. Reed demanded that his wife begin paying one-half of the living expenses. First refusing, Mrs. Reed soon began to pay. Every month Mr. Reed recorded his payments for lights, gas, telephone, groceries, and the newspaper. He kept an accounting. For approximately twenty-four years, at the end of each month, Mr. Reed presented his wife with a bill for one-half the household living expenses and Mrs. Reed reimbursed her husband to the sum presented. In addition to paying one-half of the household expenses, beginning in 1961 and continuing until the couple separated in 1985, Mrs. Reed paid her own clothing expenses, health insurance premiums and other medical expenses not paid by health insurance.

One early morning in August 1985, Mr. Reed demanded that his wife pay him $500 a month rent thereafter for living in the house that he had built. Mr. Reed told his wife that if she didn't pay him rent, he would kill her. When Mr. Reed went to a bedroom to obtain a firearm, Mrs. Reed, then dressed in nightgown, robe, and house shoes, exited the house with her handbag and car keys and drove to her sister's house. As Mrs. Reed drove away from the residence, her husband stood in the doorway of the house with a firearm in his hands. Mrs. Reed never returned to live in the house and acquired an apartment in September 1985.

Sometime in 1984, Mr. Reed informed his wife that, contrary to the antenuptial agreement, if he predeceased her, she would be permitted to remain in the house which had served as their marital residence two months and then she would have to vacate the residence. After Mrs. Reed departed the home in 1985, Mr. Reed wrote a codicil to his will which denied Mrs. Reed any right to possess the house during the remainder of her life if Mr. Reed predeceased her. The will and the codicil were admitted to probate after Mr. Reed's death, effectively precluding Mrs. Reed access to the house.

Mr. Rope contends, as point (1), that the trial court erred in sustaining Mrs. Reed's "motion in limine" and thereby denying him the affirmative defense that Mrs. Reed was precluded by at least one statute of limitation (§ 516.110, RSMo 1986, or, alternatively, § 516.120, RSMo 1986) from introducing evidence of events that occurred more than five years prior to the date on which she filed her claim. Mrs. Reed argues that a motion in limine is not appealable. She also argues that Mr. Rope waived any statute of limitation affirmative defense that he might have had by failing to raise it in his initial responsive pleading, by failing to tender an instruction to submit the issue to the jury, and by relying on an inapplicable statute of limitation.

■ The first item considered is whether the court's ruling on Mrs. Reed's "motion in limine" is appealable. The purpose of a motion in limine is to seek the trial court's ruling that precludes the attempted introduction of evidence by opposing counsel which the movant considers objectionable. *See Robbins v. Jewish Hosp. of St. Louis,* 663 S.W.2d 341, 348 (Mo.App.1983). Rulings on motions in limine are not normally appealable because they are interlocutory. *Annin v. Bi–State Dev. Agency,* 657 S.W.2d 382, 385 (Mo.App.1983); *Peters v. Henshaw,* 640 S.W.2d 197, 201 (Mo.App. 1982).

■ In this case, Mrs. Reed's written motion in limine was not limited to attempting to preclude introduction of objectionable evidence. The motion attempted to strike the affirmative defense that a statute of limitation precluded Mrs. Reed from introducing purportedly untimely evidence. The court's ruling that no statute of limitation defense was available and its ruling that it would not submit a statute of limitation instruction to the jury treated the motion in limine as a motion to strike. Thus, although entitled "motion in limine," Mrs.

Reed's motion was treated as a motion to strike defendant's affirmative defense and the court's ruling is appealable as trial error. *See* Rule 55.27(e).

■ The next issue considered under point (1) is whether Mr. Rope properly raised the statute of limitation defense. The applicability of a statute of limitation as a bar to recovery is an affirmative defense and must be properly pleaded and proved. *Central Wholesale Distrib. v. Day,* 672 S.W.2d 88, 98 (Mo.App.1984); *Bohrmann v. Schremp,* 666 S.W.2d 30, 31 (Mo.App.1984); *Smith v. Lewis County Abstract & Inv. Co.,* 415 S.W.2d 33, 35 (Mo.App.1967). *See also* Rule 55.08. The defense was not raised by motion or in Mr. Rope's initial answer to Mrs. Reed's claim filed in February 1987, nor was the defense raised in response to the amended claim filed by plaintiff. The defense was first raised in January 1990, when Mr. Rope filed an answer to plaintiff's "Second Amended Conditional Claim." Mrs. Reed claims that Mr. Rope's failure to affirmatively plead the statute of limitation defense in his initial pleading or in a "timely motion to dismiss" waived the defense.

■ Rule 55.27 provides that "[e]very defense ... to a claim in any pleading ... shall be asserted in the responsive pleading," except that certain defenses may be raised by motion. A motion to dismiss may raise the issue that a claim is barred by a statute of limitation where the petition shows upon its face that the action is barred. *Burr v. National Life & Accident Ins. Co.,* 667 S.W.2d 5, 7 (Mo.App.1984). A motion to dismiss that properly raises that a statute of limitation bars a claim may be treated as a motion for summary judgment and ruled on at that time. *Bohrmann,* 666 S.W.2d at 32. Although Rule 55.27 provides for raising a statute of limitation defense by motion before an answer must be filed, a defendant's answer must include the affirmative defense when the answer is filed.

Mr. Rope's first attempt to raise a statute of limitation as a bar to Mrs. Reed's claim was his answer to plaintiff's amended petition, filed three years after his answer to Mrs. Reed's initial claim. However, Mrs. Reed failed to file a motion to strike that portion of Mr. Rope's amended answer that raised the statute of limitation for the first time. Mr. Rope relies upon *Haney v. Thomson,* 339 Mo. 505, 98 S.W.2d 639, 644 (banc 1936), as authority that one who generally denies a claim in his answer may amend his answer and plead a statute of limitation as a bar to plaintiff's claim. The court, in *Haney,* noted that the plaintiff failed to object or except to the newly-raised affirmative defense. *Id.* 98 S.W.2d at 645. In this case, Mrs. Reed also failed to object properly to Mr. Rope's newly-raised affirmative defense, and rather than filing a motion to strike the defense, Mrs. Reed chose to file a motion in limine to preclude Mr. Rope from introducing evidence regarding the statute of limitation.

■ Mr. Rope's answer to Mrs. Reed's amended claim asserted § 516.110, or alternatively, § 516.120, as a bar to Mrs. Reed's claim. Section 516.110 is a ten-year statute of limitation and § 516.120 is a five-year statute of limitation. In March 1990, Mr. Rope amended by interlineation his answer to plead § 516.120 and, alternatively, § 516.110, as a bar to Mrs. Reed's claim. To successfully aver a statute of limitation as a bar to a claim, a party must set forth specifically the particular statute upon which he relies. *Southwestern Bell Tel. Co. v. Buie,* 758 S.W.2d 157, 161 (Mo.App. 1988). Mrs. Reed contends that alternatively pleading a second statute of limitation as a bar is insufficient to rely on it as a bar to an opponent's claim. However, pleading one statute of limitation and alternatively another does not violate the rule in *Buie* when both statutes relied upon are specifically pleaded.

■ This court is not required to determine which statute would properly apply to the antenuptial agreement signed by Mrs. Reed and her husband. Neither statute of limitation bars Mrs. Reed's claim. Mrs. Reed testified that the first breach of the antenuptial agreement occurred in 1961. She testified to repeated breaches thereafter until her husband's death in 1986. The antenuptial agreement required Mr.

Reed to provide the necessities of life to Mrs. Reed and to make his house available to Mrs. Reed for the duration of her life if Mr. Reed predeceased her. Despite the antenuptial agreement, Mr. Reed required his wife to pay her own monthly living expenses from 1961 until the time Mr. Reed forced his wife to leave the house. Mr. Reed altered his will to preclude his wife from receiving the life estate in his house that he had promised her by contract. Section 516.100, RSMo 1986, provides that statutes of limitation begin to run "after the cause of action shall have accrued." Section 516.100 also provides that the cause of action accrues, and the applicable statute of limitation begins to run, only after the occurrence of "the last item, so that all resulting damage may be recovered, and full and complete relief obtained."

In an action in contract, "[o]rdinarily a plaintiff's cause of action accrues upon a defendant's failure to do the thing at the time and in the manner contracted, and a statute of limitation begins to run when a suit may be maintained therefore." *Davis v. Laclede Gas Co.,* 603 S.W.2d 554, 555 (Mo. banc 1980), quoting *Baron v. Kurn,* 349 Mo. 1202, 1213, 164 S.W.2d 310, 316 (1942)). In the case of *Sabine v. Leonard,* 322 S.W.2d 831 (Mo. banc 1959), the supreme court instructed that a party may file suit and recover damages for all breaches of a contract providing for continued periodic performance which occurred during the contract's term provided that the petition of the injured party is filed within the period of limitation provided by statute after the last breach occurs. *Id.* at 837–38. In this case, the last breach of the antenuptial agreement occurred in February 1986. Mrs. Reed's petition was timely filed in November 1986, and pursuant to the rule in *Sabine,* she was entitled to sue and recover for damages for all breaches committed during the antenuptial agreement's term.

Mr. Rope cites *Davis v. Laclede Gas Co.,* 603 S.W.2d 554 (Mo. banc 1980), as support for his position that Mrs. Reed may recover only damages which accrued within the statute of limitation period immediately preceding the filing of her petition. Thus, he argues, the resulting verdict in behalf of Mrs. Reed far exceeds the recovery to which she is entitled under the applicable statute of limitation. The supreme court, in *Davis,* taught that the rule of law to be applied "in the peculiar and particular circumstances" of that case requires that:

if the wrong done is of such a character that it may be said that all of the damages, past and future, are capable of ascertainment in a single action so that the entire damage accrues in the first instance, the statute of limitation begins to run from that time. If, on the other hand, the wrong may be said to continue from day to day, and to create a fresh injury from day to day, and the wrong is capable of being terminated, a right of action exists for the damages suffered within the period immediately preceding suit.

*Id.* at 556. Mr. Rope's reliance on *Davis* is misplaced. All of the damages experienced by Mrs. Reed were not capable of ascertainment in a single action from the first instance. *Davis* does not overrule *Sabine.* Point (1) is denied.

■ Mr. Rope contends, as point (2), that the testimony of Mrs. Reed's expert economist, Dr. Ward, was admitted without foundation. Specifically, Mr. Rope claims that Dr. Ward's testimony about Mr. Reed's income for years 1975 through 1985 was improperly based on summaries of Mr. Reed's income tax returns for those years and that Dr. Ward never saw Mr. Reed's actual income tax returns. The summaries were provided to Dr. Ward by Mrs. Reed's attorneys. Dr. Ward utilized the summaries to determine Mr. Reed's income for years 1975 through 1985. Dr. Ward then testified regarding what percentage of Mr. Reed's income Mrs. Reed's expenses equalled for each of years 1975 through 1985. Dr. Ward used two methods in making his calculations. Mr. Rope never objected before or during Dr. Ward's testimony that Dr. Ward's calculations utilizing the summaries of Mr. Reed's tax returns were deficient and lacked foundation.

The rule that objections to evidence and the basis for the objections must be

brought to the attention of the trial court in time for it to act is axiomatic. *See State ex rel. State Highway Comm'n v. Offutt,* 488 S.W.2d 656, 660 (Mo.1972). Mr. Rope objected to the use of the summaries by Dr. Ward and moved to strike Dr. Ward's testimony only after Dr. Ward was dismissed as a witness and had departed. Income tax returns of Mr. and Mrs. Reed, some joint and some separate, for years 1969 through 1985 were introduced as exhibits earlier in the trial. Mr. Rope chose not to cross-examine Dr. Ward regarding the accuracy of the summaries. By failing to timely object to Dr. Ward's use of the income tax summaries as the basis for determining Mr. Reed's income, Mr. Rope waived any foundational objection that he may have had. Point (2) is denied.

As Point (3), Mr. Rope contests Dr. Ward's calculations of damages attributable to Mr. Reed's failure to provide Mrs. Reed a life estate in Mr. Reed's house after Mr. Reed's death as required by the antenuptial agreement. Mr. Rope claims that Dr. Ward's testimony regarding these damages was not supported by a sufficient factual basis, erroneously assessed Mrs. Reed's projected longevity at the time of trial instead of the time of Mr. Reed's death, and failed to assess the value of Mrs. Reed's loss as required by law.

During the trial, Mr. Rope urged several times that the measure of damages for the loss of Mrs. Reed's life estate in the house built by her husband is proscribed by *Johnson v. Linder,* 618 S.W.2d 265 (Mo.App. 1981). In *Johnson,* the court considered the measure of damages for the unlawful taking of personal property. *Id.* at 266. The court stated:

> The measure of damages for the unlawful taking and deprivation or detention of usable property is its "use value." (citations omitted.) "Use value" contemplates consideration of the rental value of the property detained.

*Id.* In this case, evidence was introduced to establish the rental value of the house. Evidence was also introduced to prove the average cost of ordinary repairs and taxes on the property, the responsibility of a life tenant. *See Burnett v. Quell,* 202 S.W.2d 97, 98 (Mo.App.1947). Dr. Ward, using all of this evidence and the income tax summaries provided by Mrs. Reed's attorneys, testified to the rental value of the property minus taxes and the cost of repair for the period of time from Mr. Reed's death through Mrs. Reed's life expectancy. The evidence presented and the facts identified by Dr. Ward were a sufficient basis for Dr. Ward to determine Mrs. Reed's damages.

Mr. Rope, although advocating throughout the trial that *Johnson* was controlling authority on the measure of damages, for the first time in this post-trial motion abandoned his reliance on *Johnson* and argued that § 442.530, RSMo 1986, expressed the proper measure of damages. Thus, Mr. Rope now contends that Mrs. Reed's damages should be calculated on the basis of a percentage of the total value of the marital residence as provided by § 442.530, rather than on the basis of the "use value" as described in *Johnson.* Mr. Rope now claims error in the court's reliance on *Johnson,* the law as represented by Mr. Rope throughout the trial. The general rule is that a party cannot complain on appeal of alleged error which his own conduct creates. *Gambrell v. Kansas City Chiefs Football Club,* 621 S.W.2d 382, 386 (Mo.App.1981). A party cannot lead the court into error and then employ that error as a source of complaint. *Burke v. Moyer,* 621 S.W.2d 75, 82 (Mo.App.1981). Whether the court erroneously submitted the measure of damages advocated during the trial by Mr. Rope is not considered.

Mr. Rope also contends that the trial court erred by permitting Dr. Ward to calculate Mrs. Reed's longevity, and thus all damages related to her longevity, from the date of trial instead of from the date of Mr. Reed's death. Dr. Ward calculated Mrs. Reed's damages by measuring her longevity from the date of trial, projected to be an additional 5.19 years or equivalent to approximately ten years from the date of Mr. Reed's death. On cross-examination, Dr. Ward testified that Mrs. Reed's life expectancy at the time of Mr. Reed's death in 1985 would have been 7.6 years.

Mr. Rope contends that Mrs. Reed's damages should have been calculated from the date of Mr. Reed's death and that, using her life expectancy of 7.6 years from the date of his death, Mrs. Reed's future damages at trial were limited to the remaining approximately two years instead of the 5.19 years relied upon by Dr. Ward in calculating damages.

Mr. Rope relies upon *Boten v. Brecklein,* 452 S.W.2d 86 (Mo.1970), and *Dunning v. Alfred H. Mayer Co.,* 483 S.W.2d 423 (Mo. App.1972). In *Boten,* the Missouri Supreme Court stated that the proper measure of damages for breach of a contract, "is the value of the performance of the contract; the person injured is, as far as it is possible to do so by monetary award, to be placed in the position he would have been in had the contract been performed." *Boten,* 452 S.W.2d at 93. The court continued by stating that the non-breaching party "is entitled to recover the value of the contract to him at the time of its breach or the value of the promised performance, or the value of the benefit contracted for." *Id.* Mr. Rope contends that this language in *Boten* mandates that Mrs. Reed's longevity be calculated from the date of Mr. Reed's death instead of the date of trial.

A similar issue was addressed by the Eastern District in *Leh v. Dyer,* 643 S.W.2d 65 (Mo.App.1982). In *Leh,* the plaintiff agreed to provide the defendants with $10,-000 to be used as a down payment on a house for defendants, and defendants agreed to allow plaintiff to live in the house for the remainder of her life. *Id.* at 67. In 1977, some thirteen years later, plaintiff was apparently forced to vacate the premises by the defendants. *Id.* Plaintiff sued on the contract and at trial introduced evidence that her life expectancy from the date of trial was 6.8 years. *Id.* The trial court instructed the jury to award the plaintiff damages based upon this projection that plaintiff would live an additional 6.8 years from the date of trial. *Id.* The Eastern District determined that the instruction was not erroneous and that evidence of the plaintiff's life expectancy from the date of trial "eliminated improper spec-

ulation by the jury on this key element of plaintiff's damages." *Id.* at 68.

Mr. Rope fails to direct this court's attention to any cases contradicting the calculation of longevity accepted in *Leh.* Rather, Mr. Rope stands upon the general pronouncement of damages found in *Boten.* However, permitting evidence of Mrs. Reed's life expectancy from the date of trial does not violate the rule in *Boten* that plaintiff receive "the value of the contract to him at the time of its breach or the value of the promised performance, or the value of the benefit contracted for." 452 S.W.2d at 93. Point (3) is denied.

Mr. Rope contends, as point (4), that the court erred by permitting one of Mrs. Reed's attorneys to testify and introduce evidence out of the hearing of the jury that the summaries provided to Dr. Ward accurately reflected figures from Mr. Reed's income tax returns. After Dr. Ward testified and departed, Mr. Rope moved to strike Dr. Ward's testimony, contending that insufficient foundation had been laid to establish that the summaries used by Dr. Ward in his analyses accurately contained relevant figures from Mr. Reed's income tax returns. One of the attorneys representing Mrs. Reed then testified out of the hearing of the jury that the summaries accurately reflected data from Mr. Reed's income tax returns, which had been introduced. Analysis in point (2) above makes moot Mr. Rope's contention under Point (4).

As point (5), Mr. Rope contends that the court erred by admitting evidence that Mrs. Reed performed her marital duties and was a good wife to Mr. Reed. Mr. Rope contends this evidence was irrelevant and prejudicial. Evidence is relevant if it tends to prove or disprove a fact in issue or if it tends to corroborate evidence which is relevant and which bears on the principal issue. *Lawson v. Schumacher & Blum Chevrolet, Inc.,* 687 S.W.2d 947, 951 (Mo.App.1985). Relevancy is largely committed to the discretion of the trial court. *Riney v. Zenith Radio Corp.,* 668 S.W.2d 610, 611 (Mo.App.1984). The general rule is that a person suing for breach of con-

tract is required to plead and prove performance of his contractual obligations. *See, e.g., Miran Inv. Co. v. Medical W. Bldg. Corp.*, 414 S.W.2d 297, 302 (Mo.1967).

Mr. Rope's answer to Mrs. Reed's claim denied that Mrs. Reed performed her obligations under the antenuptial agreement. Mr. Rope refused to stipulate during the trial that Mrs. Reed performed her marital obligations. Evidence that Mrs. Reed performed her marital obligations was relevant and the trial court did not abuse its discretion by permitting the introduction of evidence that Mrs. Reed performed her marital obligations during the course of the marriage. Point (5) is denied.

The judgment of the trial court is affirmed.

All concur.