Robert L. BATEMAN, et
al., Respondents,

James K. Owens, et al., Appellants,

v.

PLATTE COUNTY, Missouri,
Respondent.

No. SC 91898.

Supreme Court of Missouri,
En Banc.

April 3, 2012.

James C. Bowers Jr., Mary Jo Shaney, Patricia R. Jensen, White Goss Bowers March Schulte & Weisenfels P.C., Kansas City, for the Property Owners.

Robert H. Shaw, McGinniss & Shaw LLC, Platte City, for the County.

Jonathan Sternberg, Jonathan Sternberg, Kansas City, for Bateman.

RICHARD B. TEITELMAN, Chief Justice.

Platte County and several owners of lots in the Bridle Parc Estates subdivision appeal a judgment declaring Bridle Parc Lane (BP Lane) to be a private road. They assert that the action was barred by

the 10–year statute of limitations provided in section 516.010, RSMo.[1] Alternatively, they assert that BP Lane became a public road through statutory dedication, common law dedication and the establishment of a prescriptive easement. The judgment is affirmed.

## FACTS

In 1980, Yiddy Bloom owned a single tract of land located south of Mace Road. Bloom's property was separated from Mace Road by three other properties. In September 1980, the owners of these three properties granted Bloom three separate, contiguous easements extending from Mace Road to Bloom's property. The easements provided the only access from Bloom's property to Mace Road and specifically granted Bloom and his "successors and assigns" a "street and right of way easement."

In December 1980, Platte County approved a plat for the three properties traversed by Bloom's easements. The plat established the Bridle Parc Estates subdivision (BP–I) and depicted a street from Bloom's property to Mace Road. The street was located on Bloom's easements. The BP–I plat dedicated all streets and roads on the plats to public use. Bloom did not sign the plat.

In September 1984, Platte County approved a plat subdividing Bloom's property into the Bridle Parc Estates II subdivision (BP–II). The BP–II plat depicted a street running south from the street on the BP–I plat and terminating at the southern boundary of the BP–II subdivision. Like the BP–I plat, the BP–II plat dedicated all streets to public use and was not signed by Bloom. When BP–II was platted, the street through BP–II had no continuity with any public road.

After the BP–II plat was finalized, Bloom sold all of his BP–II lots to Robert Pease. Pease then sold all of the BP–II lots to new owners who signed the BP–II plat. The BP–II plat was amended in 1985 by consent of all of the BP–II landowners. The amendment corrected boundaries and rededicated a modified BP Lane to public use. The amended plat was recorded with Platte County on October 3, 1988.

In 2005, a developer attempted to plat a new subdivision within BP–II and sought Platte County's approval to use BP Lane as a public road. BP–II resident Robert Bateman objected and notified Platte County of the private easements on which BP Lane was situated. On May 25, 2006, the County notified Bateman of its determination that "Bridle Parc Lane is within public right-of-way."

On July 7, 2006, Bateman filed a two-count petition against the county seeking declaratory and injunctive relief. Bateman's petition asserted that BP Lane could not be dedicated to public use at the time BP–I and BP–II were platted because the easement owners never had consented to the dedication.

Platte County filed an answer denying the claims in the petition and asserting Bateman's claims were "untimely and barred by the statute of limitations." The circuit court permitted other landowners in BP–I and BP–II to intervene as either plaintiffs or defendants in the lawsuit.

The circuit court conducted a bench trial. Platte County and the intervening defendants argued that BP Lane had been dedicated statutorily to public use through the recorded BP–I and BP–II plats. Alternatively, they argued that BP Lane became a public road through a common law dedication or prescriptive easement.

1. All references to statutes are to RSMo, 2000.

Bateman and the intervening plaintiffs (collectively, plaintiffs) argued that BP Lane never was dedicated to public use because the easement holders, beginning with Yiddy Bloom, never relinquished their private easements. Plaintiffs also presented testimony supporting their position that BP Lane was used primarily by subdivision residents and never was used by the general public as a public road.

The circuit court entered a judgment declaring BP Lane to be a private road. The circuit court found that BP Lane was "never legally dedicated to public use" because the easement holders did not consent to the dedication. The court also found that BP Lane was used as a private road, not a public road. The court did not address the statute of limitations defense. Defendants appeal.

### ANALYSIS

#### I. Section 516.010

■ Defendants assert that the circuit court erred in failing to determine that Bateman's claim for declaratory judgment was barred by the 10–year statute of limitations in Section 516.010. The applicability of a statute of limitation argument presents a question of law subject to de novo review. *Warren County Concrete, L.L.C v. Peoples Bank & Trust Co.,* 340 S.W.3d 289, 290 (Mo.App.2011).

The circuit court properly declined to address defendant's statute of limitations defense because the defense was waived. Rule 55.08 requires a party to plead all affirmative defenses, including a statute of limitations defense. In *Knisely v. Leathe,* 256 Mo. 341, 166 S.W. 257, 261 (1914), this Court held that one seeking to take advantage of the statute of limitations "must plead the very provision on which he depends.'" *Modine Manufacturing Company v. Carlock,* 510 S.W.2d 462, 467 (Mo.

1974); *see also Reynolds v. Carter County,* 323 S.W.3d 447, 452 (Mo.App.2010); *Southwestern Bell Telephone Co. v. Buie,* 758 S.W.2d 157, 161 (Mo.App.1988).

■ In this case, the county's initial answer alleged only that Bateman's claims were "untimely and barred by the statute of limitations." Likewise, after additional plaintiffs and defendants intervened, defendants' answer again alleged only that plaintiffs' claims were "barred by the statute of limitations." Neither answer included a reference to a particular statute of limitation. A general reference to "the statute of limitations" does not satisfy the necessity of pleading the particular provision relied upon. See, *Livingston v. Webster County Bank,* 868 S.W.2d 154, 156 (Mo.App.1994) (motion to dismiss that pleaded "barred by the applicable Missouri Statute of Limitations" did not plead the particular statute of limitation and was deficient); *Tudor v. Tudor,* 617 S.W.2d 610, 613 (Mo.App.1981) (defendant's allegation that plaintiff's claim was "barred by the statute of limitations" held insufficient to raise the affirmative defense).

■ Defendants argue that their statute of limitations defense was tried by consent pursuant to Rule 55.33(b) because plaintiffs asserted in a post-trial brief that the action was not barred by section 516.010. Rule 55.33(b) deals with "Amendments to Conform to the Evidence" and states, in pertinent part:

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend

does not affect the result of the trial of these issues.

Plaintiffs' reference to section 516.010 in a post-trial brief does not constitute trial of the issue by express or implied consent. Asserting a statute of limitation after the trial is over cannot constitute trial by consent. A defense must be asserted specifically before the case is decided. *Reynolds,* 323 S.W.3d at 452; *see also Patel v. Pate,* 128 S.W.3d 873, 877 (Mo.App.2004) (holding that a statute of limitation defense raised for the first time in a motion to dismiss filed at the close of the plaintiffs' evidence was untimely). Defendants did not specifically assert section 516.010 as an affirmative defense prior to trial and thereby waived that defense. Consequently, plaintiffs' action is not barred by the 10–year limitation period set forth in section 516.010.

## II. BP Lane is a private road

■■ Defendants assert that BP Lane became a public road through statutory dedication, common law dedication and the establishment of a prescriptive easement. Because this was a court-tried case, the trial court's judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence or it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). This Court views the evidence and permissible inferences drawn from the evidence in the light most favorable to the judgment. *Suffian v. Usher,* 19 S.W.3d 130, 136 (Mo. banc 2000).

It is undisputed that, in 1980, Bloom was granted three contiguous "street and right of way" easements from his property, now known as BP–II, across the property now known as BP–I. Bloom's easements conferred a right to use part of the property now known as BP–I for the purpose of maintaining an access road from Bloom's property to Mace Road. The easements were granted not only to Bloom but also to his "successors and assigns." Bloom's easements were "easements appurtenant" because they created a dominant tenement (the land that benefits from the easement) and servient tenements (the land that is burdened by the easement). *See Gardner v. Maffitt,* 335 Mo. 959, 74 S.W.2d 604, 606–07 (1934). Under the facts of this case, BP–II is the dominant tenement and BP–I is the servient tenement.

Defendants' argument that the easement across BP–I was dedicated to the public fails for two reasons. First, the property owners in BP–I cannot eliminate unilaterally the easements that belonged to Bloom and that were transferred to his successors and assigns in BP–II. The owners of the land platted as BP–I had no power to eliminate the easement for the simple fact that it did not belong to them. This principle is illustrated in *City of Sarcoxie v. Wild,* 64 Mo.App. 403 (1896).

In *Sarcoxie,* Emma Carnahan acquired a 20–acre parcel encumbered by an access easement owned by her neighbor, Herman Wild. *Id.* at 405. Similar to this case, Ms. Carnahan subdivided her land and purported to dedicate Wild's easement as a public road. *Id.* Wild blocked the public road and was convicted of trespass. *Id.* His conviction was reversed because Ms. Carnahan had no power to dedicate Wild's private easement to public use because her property was the servient estate to Wild's easement. *Id.* at 406. Her title was encumbered by Wild's property interest in the easement. *Id.* Because Wild did not consent to the dedication of his private easement to the public, Ms. Carnahan's purported dedication was a nullity. Wild could not be deprived of his easement "without his consent, or by some lawful and regular proceeding." *Id.*

The purported dedication of the easement over BP–I and owned by the "successors and assigns" of Bloom fails for the same reasons as Carnahan's purported dedication in *Sarcoxie*. The owners of land in BP–II were entitled to retain their easement across BP–I unless they either consented to the dedication or the easement was eliminated via some other legal proceeding. That did not happen in this case.

■ The fact that the easement owners did not consent to the dedication disposes of defendants' argument that BP Lane became a public road pursuant to section 445.070. Section 445.070 provides that a recorded plat is a "sufficient conveyance to vest the fee of such parcels of land as are therein named, described, or intended for public use in such city," or "in the proper county . . . ." However, as established above, the BP–I plat did not eliminate the easement because neither Bloom nor his successors relinquished their easements and there was no "lawful or regular proceeding" to divest them of the easements. Interpreting section 445.070 in the manner advocated by defendants would require this Court to sanction the condemnation of a privately held easement without just compensation. This Court will not interpret a statute in a manner that leads to an unconstitutional result. *See, Cascio v. Beam,* 594 S.W.2d 942, 946 (Mo. banc 1980)( "[A] court should avoid a construction which would bring a statute into conflict with constitutional limitations").

■ Defendants also argue that the BP–II plat converted BP Lane from a private to a public road. It did not. The BP–II plat, which subdivided the dominant tenement, did not eliminate the easements because the plat purported only to dedicate to public use the "streets and roads shown on this Plat . . . ." A plat is interpreted according to its plain language.

*Saladin v. Jennings,* 111 S.W.3d 435, 441 (Mo.App.2003). The BP–II plat did not refer to the BP–I easements and, therefore, did not purport to dedicate the BP–I easements to public use. Moreover, as the trial court found, the portion of the road through BP–II had no continuity with a public road when BP–II was platted. Generally, a private road will not be dedicated to public use if, at the time of the purported dedication, the private road does not connect to a public road. *White v. Meadow Park Land Co.,* 240 Mo.App. 683, 213 S.W.2d 123, 126 (1948). The BP–II plat did not convert BP Lane to a public road.

■ The second reason that defendants' argument fails is that the trial court found, as factual matter, that there was no public use of BP Lane. There was ample testimony from residents of BP–I and BP–II to support this finding and, under the applicable standard of review, this Court defers to the finding that BP Lane was not used as a public road. The fact that BP Lane was not used as a public road disposes of defendants' remaining arguments that BP Lane was dedicated as a public road pursuant to section 228.190.1, common law dedication and by establishment of a prescriptive easement.

Section 228.190.1 provides in pertinent part:

"All roads in this state that have been established by any order of the county commission, and have been used as public highways for a period of ten years or more, shall be deemed legally established public roads; and all roads that have been used as such by the public continuously, and upon which there shall have been expended public money or labor for such period shall be deemed legally established roads . . . ."

All dedications under section 228.190.1 are premised on public use for a period of 10 years or more. There was no dedication of BP Lane to the public pursuant to section 228.190.1 because, as the trial court found, there has been no public use of BP Lane.

 The lack of public use also disposes of defendants' arguments of common law dedication and prescriptive easement. A common law dedication requires proof of the owner's intent to dedicate the road to public use, public acceptance of such use and actual use by the public. *Tinnes v. Brand,* 248 S.W.3d 113, 115 (Mo.App.2008). Similarly, a prescriptive easement requires proof of "continuous, uninterrupted, visible, and adverse use which endures for at least ten years." *Phillips v. Sommerer,* 917 S.W.2d 636, 638 (Mo.App.1996). The fact that BP Lane was not used by the public means that there was no common law dedication or prescriptive easement.

## CONCLUSION

The judgment is affirmed.

All concur.