

# SUPREME COURT OF MISSOURI
## en banc

DIGREGORIO FOOD PRODUCTS, INC., )
  )
  Respondent, )
  )
v. )  No. SC98443
  )
JOHN RACANELLI, d/b/a RACANELLI'S )
CUCINA PIZZA EXPRESS, RACANELLI'S )
CUCINA, RACANELLI'S DELMAR, )
RACANELLI'S KIRKWOOD, RACANELLI'S )
FENTON, AND RACANELLI'S NEW YORK )
PIZZERIA, )
  )
  Appellant. )

*Opinion issued November 3, 2020*

**APPEAL FROM THE CIRCUIT COURT OF ST. LOUIS COUNTY**
The Honorable Thea A. Sherry, Judge

John Racanelli appeals the circuit court's judgment in favor of DiGregorio Food Products, Inc. Because the underlying action is governed by the five-year statute of limitations set forth in § 516.120(1),[1] the circuit court erroneously declared the law when it determined the 10-year statute of limitations contained in § 516.110(1) governed and entered judgment. The circuit court's judgment is hereby reversed and vacated.

---

[1] All statutory references are to RSMo 2000, unless otherwise provided.

**Factual Background and Procedural History**

John Racanelli operates pizza restaurants in the St. Louis area. DiGregorio Food Products, Inc. is a food manufacturing, retail, and service distribution business. DiGregorio's food service distribution division sells its products to restaurants and grocery stores in the St. Louis area. At some point in the late 1980s or mid-1990s, DiGregorio became an ingredient supplier for Racanelli's pizza restaurants.

The course of business between DiGregorio and Racanelli's restaurants was as follows. A manager from one of Racanelli's restaurants would call DiGregorio and place an order. After receipt of the order, DiGregorio's warehouse employees would gather the requested goods and prepare them for delivery on the following day. The next day, the delivery driver would receive an invoice for the order, load the delivery truck, and transport the goods to the appropriate Racanelli's restaurant. Upon arrival at the restaurant, a Racanelli's manager would sign the invoice and return it to the driver.

Racanelli paid DiGregorio on "seven-day terms," meaning Racanelli would pay for the requested goods at the end of the week and a new delivery would be made the following week. While this arrangement worked for some time, Racanelli began making payments sporadically and then, in 2009 or 2010, failed to make payments altogether. Racanelli's unpaid invoices totaled $44,383.85. DiGregorio contacted Racanelli and his wife and requested they pay for the unpaid invoices; they refused to pay. DiGregorio ended its business relationship with Racanelli and his restaurants.[2]

---

[2] At trial, John DiGregorio, who is the corporation's secretary and treasurer, testified the business relationship with Racanelli ended in sometime in 2010.

On December 5, 2016, DiGregorio filed suit in the circuit court of St. Louis County. The petition pleaded claims for suit on account and account stated. Racanelli moved for summary judgment, arguing both of DiGregorio's causes of action were barred by the five-year statute of limitations contained in § 516.120(1).[3] DiGregorio argued its lawsuit was timely because the 10-year statute of limitations contained in § 516.110(1) applied. The circuit court overruled the motion for summary judgment, and the case proceeded to a bench trial.

After trial, the circuit court declared the 10-year statute of limitations applied and concluded Racanelli was responsible for the amount of the unpaid invoices as damages. Additionally, the circuit court noted "it has considered all of Racanelli's defenses, but finds nothing compelling or credible in those defenses." Racanelli appealed, and the court of appeals affirmed in an unpublished opinion, holding the 10-year statute of limitations applied because the signed invoices evidenced a written promise by Racanelli to pay DiGregorio. This Court granted transfer and has jurisdiction. Mo. Const. art. V, § 10.

## Standard of Review

Racanelli argues the circuit court erred in concluding § 516.110(1)'s 10-year statute of limitations—as opposed to § 516.120(1)'s five-year statute of limitations—applied to DiGregorio's claims. "The circuit court's judgment will be upheld unless there is no

[3] Racanelli also argued for the first time in his "Reply in Further Support of his His Motion for Summary Judgment" that the four-year statute of limitations contained in Missouri's Uniform Commercial Code, § 400.2-725(1), barred DiGregorio's causes of action. Because the five-year statute of limitations in § 516.120(1) applies and bars DiGregorio's lawsuit, this opinion will not address whether § 400.2-725(1) applies.

3

substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Karney v. Dep't of Labor & Indus. Relations*, 599 S.W.3d 157, 161 (Mo. banc 2020) (internal quotation marks omitted). The applicability of a statute of limitations is a question of law this Court reviews *de novo*. *Bateman v. Platte Cnty.*, 363 S.W.3d 39, 42 (Mo. banc 2012).

**Analysis**

"Missouri has two statutes of limitation relating generally to contract actions: sections 516.110(1) and 516.120[(1)]." *Hughes Dev. Co. v. Omega Realty Co.*, 951 S.W.2d 615, 616 (Mo. banc 1997). Section 516.120(1) requires "[a]ll actions upon contracts, obligations or liabilities, express or implied, except those mentioned in section 516.110, and except upon judgments or decrees of a court of record, and except where a different time is herein limited" to be brought within five years. Section 516.110(1) requires "[a]n action upon any writing, whether sealed or unsealed, for the payment of money or property" to brought within 10 years.

This Court discussed the interplay between § 516.110(1) and § 516.120(1) in *Rolwing v. Nestle Holdings*, *Inc*.:

> Section 516.110(1) is an exception to the general five-year limitations period established by section 516.120(1). The exception mentioned in section 516.110(1) consists of actions upon a written contract ... for the payment of money or property. The plain language of section 516.120(1), however, applies generally to all breach of contract actions, including written contracts containing a promise for the payment of money or property.

4

437 S.W.3d 180, 182 (Mo. banc 2014) (alteration in original) (internal footnote and quotation marks omitted). Said differently, § 516.110(1) "applies when a plaintiff files suit to enforce a written promise to pay money." *Id.* at 183.

The issue presented in this case is whether the signed invoices actually contain a written promise to pay money.[4] If so, § 516.110(1)'s 10-year statute of limitations applies, and DiGregorio's claims were timely filed. If not, § 516.120(1)'s general five-year statute of limitations applies, and DiGregorio's claims are barred.

"[T]he essence of a promise to pay money is that it is an acknowledgment of an indebtedness, an admission of a debt due and unpaid." *Martin v. Potashnick*, 217 S.W.2d 379, 381 (Mo. 1949); *see also Silton v. Kansas City*, 446 S.W.2d 129, 132 (Mo. 1969) (stating a promise to pay money is comprised of two elements: "an acknowledgment of a debt and an admission [said] debt is due and unpaid"). What is more, the promise to pay money must arise from the writing's explicit language; extrinsic evidence cannot supply the promise. *Cmty. Title Co. v. Stewart Title Guar. Co.*, 977 S.W.2d 501, 502 (Mo. banc 1998); *see also Martin*, 217 S.W.2d at 381 (stating the language of the writing, by fair implication, must contain the promise to pay money).

---

[4] In his application for transfer and during oral argument, Racanelli urged this Court to resolve the following issue: whether a seller's invoice to its buyer constitutes a promise to pay money within the meaning of § 516.110(1). In determining what statute of limitations applies to a contract action, this Court refuses to declare bright-line rules, as each case turns on the language of the relevant contract or writing. *Spalding v. Stewart Title Guar. Co.*, 463 S.W.3d 770, 775 n.2 (Mo. banc 2015). Even assuming *arguendo* the signed invoices constitute a contract between Racanelli and DiGregorio, this Court's analysis remains unchanged. The relevant issue is whether the invoices, either by express language or a fair implication of that language, contain Racanelli's promise to pay DiGregorio money.

The invoices at issue here were prepared by DiGregorio and contain the following terms: the date the shipment was ordered, the Racanelli's pizzeria delivered to, the date the order was shipped, the shipping method, the payment terms, the quantity of each item shipped, units of measurement, item number, description of the goods delivered, unit and extended prices of the goods delivered, and the total cost of the shipment. *See* Attached Invoice. Of course, none of these terms can be said to be Racanelli's acknowledgement of a debt or his admission a debt is due and unpaid. The only term on the invoice possibly attributable to Racanelli is the restaurant manager's signature. The invoices are silent, however, as to the significance of the signature. The invoice does not contain any language suggesting or implying the signature is Racanelli's acknowledgement of indebtedness or his admission of a debt due and unpaid.

Furthermore, a comparison of writings this Court has found to contain promises to pay money with the signed invoices shows the invoices lack the explicit language necessary to support such a promise. In *Community Title Co.*, this Court found a promise to pay money in a title insurance underwriting agreement that stated in pertinent part, "[Stewart Title] shall . . . compensate [Community Title] as follows: Pay [Community Title] annually . . . twenty percent (20%) of the cash amount received by [Stewart Title] from such Agents." 977 S.W.2d at 502. In *Hughes Development Co.*, this Court determined a promise to pay money was present in a written management service agreement that declared Omega Realty Company ("Omega") would pay Hughes Development Company a percentage of the management fees Omega collected from certain apartment owners. 951 S.W.2d at 616-17. Additionally, in *Missouri, Kansas, & Texas Railway Company v.*

6

*American Surety Co. of New York*, this Court held the 10-year statute of limitations applied to a suit on an indemnity bond providing in pertinent part, "That we, J.T. Miller and L.G. Graham, . . . and American Surety Company of New York, as surety, are indebted to the Missouri, Kansas & Texas Railway Company . . . in the penal sum of $10,000[.]" 236 S.W. 657, 658, 663-64 (Mo. banc 1921).

The signed invoices in this case do not contain any language—much less language similar to the pertinent portions of the writings in *Community Title Co., Hughes Development Co.*, or *Missouri, Kansas, & Texas Railway Co.*—evidencing or implying Racanelli's promise to pay money to DiGregorio. Because DiGregorio's claims do not seek to enforce a written promise to pay money, § 516.110(1) does not apply. Because § 516.110(1) does not apply, the general five-year statute of limitations contained in § 516.120(1) applies and bars DiGregorio's lawsuit.

### Conclusion

Even assuming—as the circuit court found—that DiGregorio proved its claims, this case is governed by the five-year statute of limitations contained in § 516.120(1). Therefore, the circuit court erroneously declared the law in determining § 516.110(1)'s 10-year statute of limitations applied to the underlying claims. The circuit court's judgment is hereby reversed and vacated.

_____
Zel M. Fischer, Judge

Wilson, Russell, Powell, Breckenridge, and Stith, JJ., concur;
Draper, C.J., dissents without opinion.

7



Electronically Filed - St Louis County - December 05, 2016 - 12:04 PM

**DI GREGORIO FOOD PRODUCTS, INC.**

2232 Marconi
St. Louis, Missouri 63110
Phone (314) 776-1062
Fax (314) 776-3954
www.digregoriofoods.com

## INVOICE

| NUMBER | PAGE |
|---|---|
| 040733 | 8 |
| ORDER DATE | |
| 12/14/2009 | |

Racanelli's Cucina

6655 Delmar
St. Louis MO     63130

Racanelli's Cucina

6655 Delmar
St. Louis MO     63130

| SHIP DATE | CUSTOMER NO. | SALES PERSON | PO NUMBER | SHIP VIA | TERMS |
|---|---|---|---|---|---|
| 12/15/2009 | RACANELLI DELM | | ERIC | LOCAL DELIVERY | Net 30 |

| QTY. SHIPPED | UNIT OF MEASURE | ITEM NUMBER | DESCRIPTION | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|
| 8 | EA | 0101042 | CHEESE Mascarpone  12/1# Tub Bel Gioioso | $3.95 | $31.60 |
| 134.53 | LB | 0101049 | CHEESE Mozzarella W/M Loaf 8/6# Stella<br>44.88, 44.87, 44.78 | $1.99 | $267.71 |
| 1 | CS4 | 0101057 | CHEESE Parmesan Grated 4/5# Royalty | $58.00 | $58.00 |
| 12.00 | LB | 0101069 | CHEESE Provolone Stella 3/12#<br>1 Loaf | $2.69 | $32.28 |
| 10.00 | LB | 0101110 | CHEESE Cheddar Loaf 10#<br>1 Loaf | $1.95 | $19.50 |
| 1 | CASE | 0103004 | BAKERY Semolina #1 50# General Mills | $23.50 | $23.50 |
| 1 | CASE | 0105038 | MEAT Pepperoni Patrick Cudahy 2/12.5# | $54.50 | $54.50 |
| 2 | CASE | 0305127 | MEAT Sausage Italian Mild Bulk Raw 2/5# DiGregorio | $14.90 | $29.80 |
| 1 | CASE | 0306010 | PASTA Ravioli Cheese Jumbo Round 130 ct/10#  #40088 L | $27.39 | $27.39 |
| 14 | CASE | 0505008 | BAKERY Flour All Trump High Gluten 50# G.M. | $14.95 | $209.30 |
| 5 | CASE | 0508010 | OIL Soybean 35# Gateway | $19.50 | $97.50 |
| 1 | CS6 | 0508076 | OIL Olive 10% Blend 6/1gal Casa Mia | $39.00 | $39.00 |
| 1 | CASE | 0509020 | OLIVE Calamata Pitted Ex Large 22# | $69.50 | $69.50 |
| 1 | CS6 | 0514010 | SAUCE Pesto 6/23oz #46914 Roland | $49.75 | $49.75 |
| 2 | CASE | 0514030 | SAUCE Pizza Pizzaiolo 6/10# Full Red | $24.95 | $49.90 |
| 2 | CS6 | 0518043 | TOM Crushed 6/10# Tomato Magic Full Red | $24.95 | $49.90 |
| 1 | CASE | 0519013 | VEG Bean Garbanzo 6/#10 | $24.75 | $24.75 |
| 1 | CASE | 0713031 | PASTA Spaghetti 2/10# #354005 Barilla | $20.50 | $20.50 |
| 1 | CASE | 0713159 | PASTA Fettuccine Bulk #807901 2/10# Ambra | $17.95 | $17.95 |
| 1 | EA | ADD | Added Items to the Invoice | $0.00 | $0.00 |
| 5 | EA | 0516067 | SPICE Vanilla Imitation | $1.69 | $8.45 |
| 1 | EA | ADD | Added Items to the Invoice | $0.00 | $0.00 |
| 2 | EA | 0507004 | SPECIALTY Nutella 12/26oz | $6.99 | $13.98 |

COMMENTS:

| | |
|---|---|
| MISC. CHARGES | $.00 |
| SALES TAX | $.00 |
| FREIGHT | $.00 |
| **TOTAL** ▶ | **$1,191.7** |

8